STATE OF NORTH CAROLINA v. ALFORD JONES

No. 29

(Filed 17 June 1976)

**1. Homicide § 4— homicide in perpetration of robbery — first degree murder**

A murder committed in the perpetration of, or attempt to perpetrate, a robbery is murder in the first degree and punishable by death.

State v. Jones

2. Constitutional Law § 36; Homicide § 31— felony-murder — death penalty constitutional

G.S. 14-17 denoting the types of homicides which constitute murder in the first degree and providing that the punishment therefor be death is constitutional.

3. Homicide § 20— photographs of clothing admitted — subsequent admission of clothing — no error

Articles of clothing worn by a homicide victim were admissible in the trial of his assailant, even though photographs of the victim's clothing had been previously admitted for illustrative purposes.

4. Homicide § 21— gunshot wound — treatment with drug — reaction to drug as cause of death — sufficiency of evidence of homicide

The State's evidence was sufficient to show beyond a reasonable doubt that the death of deceased was proximately caused by shotgun pellets fired into his chest by defendant where such evidence tended to show that prior to the robbery-homicide the victim was 60 and suffered from a chronic lung disease which left his lungs black, very fibrous and scarred; on 6 January 1975 defendant shot him in the left chest with a sawed-off shotgun inflicting wounds over an area of 12 to 13 inches; the pellets penetrated the skin and muscles of the chest wall, puncturing the left lung and permitting air to leak into the space between the lung and chest wall; the lung partially collapsed; the injury to the lungs caused a severe infection; to arrest the infection it was necessary for the attending physicians to administer antibiotics in the form of sulfa drugs, including a drug called gantrisin; the victim had a hypersensitivity to gantrisin and developed myocarditis, an inflammation of the heart which can be fatal; the inflammation of the victim's heart was the immediate cause of his death and was a natural and direct result of the gunshot wound he sustained.

5. Homicide § 21— inflicting injury — negligent treatment or neglect — sufficiency of evidence of murder

If it be conceded *arguendo* that a victim's death immediately resulted from improper or unskilled treatment by attending physicians, that is no defense to a charge of homicide against one who has inflicted a dangerous wound which necessitated the treatment, since neither negligent treatment nor neglect of an injury will excuse a wrongdoer unless the treatment or neglect was *the sole cause of death.*

DEFENDANT appeals from judgment of *Webb, J.,* 17 March 1975 Criminal Term, LENOIR Superior Court.

Defendant was tried upon a bill of indictment, proper in form, charging him with the first degree murder of William B. Turner, Sr., on 6 January 1975 in Lenoir County.

The State's evidence tends to show that defendant and two accomplices named Randolph Jackson Freeman and Jessie Ray

Harris met at a trailer in Kinston on the late afternoon of 6 January 1975 and agreed "to go to the country to get some money . . . by armed robbery." With Freeman driving, the three men rode into the country looking for stores they could rob. They were armed with a .22 caliber pistol and a sawed-off shotgun, both furnished by defendant. When they arrived at the first grocery store it was closed. They drove on to a second store but, observing many cars and people there, decided it was too crowded to rob. They returned to Kinston and rode around looking for someone to rob. On Willow Street they saw a man leave a house and enter a white Ford. Defendant said he might be an insurance man and told the driver to follow him. They followed the "insurance man" down Willow Street. When he stopped at a trailer home and entered, defendant and Jessie Ray Harris left the car and told Randolph Freeman to wait for them around the corner. Defendant at that time was armed with the sawed-off shotgun and Jessie Ray Harris with the .22 caliber pistol. Defendant and Harris put some black silk cloth over their faces and waited until the "insurance man" came out. In about three minutes he left the trailer and started for his car. The two robbers converged upon him as defendant leveled the shotgun at the man. The victim started "to go in his pocket for his gun" and defendant shot him in the chest with the sawed-off .410 shotgun. The two robbers then fled and were picked up by Randolph Freeman.

The foregoing is a brief summary of the testimony of Randolph Freeman and Jessie Ray Harris, both of whom pled guilty to second degree murder and conspiracy to commit armed robbery and testified for the State.

The "insurance man" was later identified as William B. Turner, Sr. At the time he was shot he was making his rounds, collecting insurance premiums. He made his way to a nearby house and sought help. An ambulance was called and Mr. Turner was taken to Lenoir Memorial Hospital in Kinston. He was suffering from shotgun wounds in the chest and died on 27 January 1975.

Dr. Sylvanus W. Nye, an expert in the field of pathology, performed an autopsy upon the body. Wounds on the left chest were spread over an area of 12 to 13 inches, scattered in a random pattern. Pellets were found in the wounds beneath the skin and in the muscles of the chest wall. The lung was torn so that air leaked into the space between the lung and the chest

wall. In the course of medical treatment a tube had been inserted by the surgeon into the chest cavity to evacuate air that had collected there. The right lung was fully expanded but the left lung was partially collapsed due to air leakage where a pellet had torn the lung.

Mr. Turner had been treated with sulfa drugs, including a drug called gantrisin which had been administered the day before he died. It was Dr. Nye's opinion that Mr. Turner had a hypersensitivity to gantrisin and developed myocarditis, an inflammation of the heart which can be fatal. Dr. Nye testified: "The man had chronic lung disease. The injury to his lungs had caused a severe infection. He was still producing purulent sputum and they needed another antibiotic agent to try to control the chronic infection in his lung." In the opinion of Dr. Nye, that was the reason gantrisin was administered to Mr. Turner. When asked to state his opinion as to the cause of death, Dr. Nye said: "The inflammation of his heart was the immediate cause of his death. I would say the immediate cause of his death was a natural and direct result of the gunshot wound he sustained on January 6, 1975."

Defendant offered no evidence. The jury convicted him of murder in the first degree, and he was sentenced to death. He appealed to the Supreme Court and assigns errors discussed in the opinion.

*Leland M. Heath, Jr., attorney for defendant appellant.*

*Rufus L. Edmisten, Attorney General; Edwin M. Speas, Jr., Special Deputy Attorney General; Elizabeth C. Bunting, Associate Attorney, for the State of North Carolina.*

HUSKINS, Justice.

Defendant moved to quash the bill of indictment on the ground that G.S. 14-17 is unconstitutional. Denial of the motion constitutes his first assignment of error.

While the constitutionality of a statute under which a defendant is prosecuted may be challenged by a motion to quash, *State v. Fredell*, 283 N.C. 242, 195 S.E. 2d 300 (1973); *State v. Atlas*, 283 N.C. 165, 195 S.E. 2d 496 (1973), the motion in this case is merely an extension of the argument that the death penalty constitutes cruel and unusual punishment proscribed by the Eighth Amendment to the Federal Constitution.

Article XI, section 2 of the Constitution of North Carolina reads as follows:

> "The object of punishments being not only to satisfy justice, but also to reform the offender and thus prevent crime, murder, arson, burglary, and rape, and these only, may be punishable with death, if the General Assembly shall so enact."

G.S. 14-17 reads, in pertinent part, as follows:

> "A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, kidnapping, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death."

[1]  Application of the felony-murder rule contained in the quoted enactment of the General Assembly supplants the necessity for proof of an intentional killing with malice after premeditation and deliberation. *State v. Williams*, 284 N.C. 67, 199 S.E. 2d 409 (1973). Thus a murder committed in the perpetration of, or attempt to perpetrate, a robbery is murder in the first degree and punishable by death. *State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976) ; *State v. Carey*, 285 N.C. 509, 206 S.E. 2d 222 (1974).

[2]  The constitutionality of G.S. 14-17 has been upheld by this Court in many recent decisions, including *State v. Alford*, 289 N.C. 372, 222 S.E. 2d 222 (1976) ; *State v. Waddell*, 289 N.C. 19, 220 S.E. 2d 293 (1975) ; *State v. Robbins*, 287 N.C. 483, 214 S.E. 2d 756 (1975) ; *State v. Simmons*, 286 N.C. 681, 213 S.E. 2d 280 (1975) ; *State v. Honeycutt*, 285 N.C. 174, 203 S.E. 2d 844 (1974) ; *State v. Dillard*, 285 N.C. 72, 203 S.E. 2d 6 (1974) ; *State v. Jarrette*, 284 N.C. 625, 202 S.E. 2d 721 (1974) ; *State v. Fox*, 277 N.C. 1, 175 S.E. 2d 561 (1970). Unless further review is required by legislative enactment or by the Supreme Court of the United States, this assignment has been the subject of final judicial determination in this State.

[3]  Defendant contends the trial court erred by permitting articles of clothing worn by the deceased to be offered in evidence and passed among the members of the jury. Photographs of the victim's clothing had been previously admitted for illus-

State v. Jones

trative purposes, and defendant argues admission of the articles themselves merely inflamed the jury against him. This constitutes defendant's second assignment of error.

This assignment is without merit. Articles of clothing worn by the victim at the time the crime was committed are competent evidence, and their admission has been approved in many decisions. *State v. Rogers*, 275 N.C. 411, 168 S.E. 2d 345 (1969), *cert. denied* 396 U.S. 1024, 24 L.Ed. 2d 518, 90 S.Ct. 599 (1970) ; *State v. Atkinson*, 275 N.C. 288, 167 S.E. 2d 241 (1969), *death sentence vacated* 403 U.S. 948, 29 L.Ed. 2d 859, 91 S.Ct. 2283 (1971) ; *State v. Bass*, 249 N.C. 209, 105 S.E. 2d 645 (1958) ; *State v. Speller*, 230 N.C. 345, 53 S.E. 2d 294 (1949), *cert. denied* 340 U.S. 835, 95 L.Ed. 613, 71 S.Ct. 18 (1950) ; *State v. Petry*, 226 N.C. 78, 36 S.E. 2d 653 (1946) ; *State v. Wall*, 205 N.C. 659, 172 S.E. 216 (1934) ; *State v. Fleming*, 202 N.C. 512, 163 S.E. 453 (1932) ; *State v. Vann*, 162 N.C. 534, 77 S.E. 295 (1913). *See* 1 Stansbury's North Carolina Evidence § 118 (Brandis rev. 1973), and cases cited therein.

The fact that photographs of articles of clothing worn by the deceased on the night he was shot had been previously offered in evidence does not make the clothing itself inadmissible. In *State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572 (1971), *death sentence vacated* 408 U.S. 939, 33 L.Ed. 2d 761, 92 S.Ct. 2873 (1972), it was argued that the introduction of certain items of clothing unnecessarily tended to inflame the minds of the jurors so as to deny defendant a fair trial because certain stipulations had been entered into between the State and defendant regarding the circumstances of the death. Held: Such items of evidence were admissible as tending to shed light upon the crime notwithstanding the stipulations of counsel.

So it is here. The victim, William B. Turner, Sr., was shot in the chest and the clothing through which the shots passed was admissible to show the location of the wounds and was strong evidence on the issue whether the death of the deceased was proximately caused by the infliction of the shotgun wounds. The blood-covered items of clothing were relevant and shed light upon the extent of the bleeding and the seriousness of the wounds suffered by the deceased. Defendant's second assignment is overruled.

Defendant moved for nonsuit at the close of the State's evidence. His motion is grounded upon the contention that the

evidence is insufficient to establish a causal relation between the victim's death and the gunshot wounds inflicted upon him by defendant. Denial of the motion constitutes defendant's third and final assignment of error.

To warrant a conviction for homicide the State must establish that the act of the accused was a proximate cause of the death. *See State v. Minton*, 234 N.C. 716, 68 S.E. 2d 844 (1952) ; *State v. Everett*, 194 N.C. 442, 140 S.E. 22 (1927). Criminal responsibility arises only if his act caused or directly contributed to the death. *State v. Luther*, 285 N.C. 570, 206 S.E. 2d 238 (1974) ; *State v. Horner*, 248 N.C. 342, 103 S.E. 2d 694 (1958). *See* 40 Am. Jur. 2d, Homicide §§ 13 and 15 (1968), and cases cited therein. "[T]he act of the accused need not be the immediate cause of the death. He is legally accountable if the direct cause is a natural result of the criminal act." *State v. Minton, supra; accord, State v. Phelps*, 242 N.C. 540, 89 S.E. 2d 132 (1955).

[4] When tested by these rules, the State's evidence in this case suffices to show beyond a reasonable doubt that the death of William B. Turner, Sr., was proximately caused by the shotgun pellets fired into his chest by defendant. The State's evidence is sufficient to support the following findings: Prior to the robbery the victim was sixty years of age and suffered from a chronic lung disease which left his lungs black, very fibrous and scarred. On 6 January 1975 defendant shot him in the left chest with a .410 gauge sawed-off shotgun inflicting wounds over an area of 12 to 13 inches. The pellets penetrated the skin and the muscles of the chest wall, puncturing the left lung and permitting air to leak into the space between the lung and the chest wall. This caused a partial collapse of the left lung due to air leakage. The injury to the lungs caused a severe infection which was producing purulent sputum. To arrest the infection it was necessary for the attending physicians to administer antibiotics in the form of sulfa drugs, including a drug called gantrisin. Mr. Turner had a hypersensitivity to gantrisin and developed myocarditis, which is an inflammation of the heart that can be fatal. The inflammation of Mr. Turner's heart was the immediate cause of his death and was a natural and direct result of the gunshot wound he sustained on 6 January 1975. These permissible findings are fully supported by the expert testimony of Dr. Nye. It necessarily follows that the evidence was sufficient to carry to the jury the question whether

In re Edens

the shotgun wounds inflicted upon the deceased by the defendant were the proximate cause of death. *See State v. Bartlett,* 257 N.C. 669, 127 S.E. 2d 241 (1962). *See also State v. Parrish,* 251 N.C. 274, 111 S.E. 2d 314 (1959) ; *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431 (1956).

**[5]** The fact that the gantrisin caused myocarditis which, in turn, was the immediate cause of death, affords defendant no sanctuary. If it be conceded *arguendo* that the victim's death immediately resulted from improper or unskilled treatment by attending physicians, that is no defense to a charge of homicide against one who has inflicted a dangerous wound which necessitated the treatment. Neither negligent treatment nor neglect of an injury will excuse a wrongdoer unless the treatment or neglect was *the sole cause of death. See* 40 Am. Jur. 2d, Homicide, § 19 (1968), and cases cited therein; Annot., 100 A.L.R. 2d 769 (1965). Where, as here, gunshot wounds inflicted by the accused are a contributing cause of death, defendant is criminally responsible therefor. Defendant's third assignment of error is overruled.

The record discloses a senseless and unprovoked killing committed during the attempted perpetration of an armed robbery. Defendant stands properly convicted of this crime following a fair trial before an impartial jury. The verdict and judgment must therefore be upheld.

No error.