STATE OF NORTH CAROLINA v. KEITH RAY ATKINS

No. 8121SC1322

(Filed 6 July 1982)

Automobiles and Other Vehicles § 112; Homicide § 27; Narcotics § 3.3— involuntary manslaughter—error to instruct concerning driving under influence of drugs—opinion testimony constituting insufficient evidence

In a prosecution for involuntary manslaughter, the trial court erred in instructing that the jury should consider whether defendant violated G.S. 20-139 by driving under the influence of drugs since the only evidence concerning the drug use consisted of a bag of marijuana found on defendant and opinion testimony of an eyewitness to the accident who felt that in his job, "pumping gas," he had some experience in determining whether someone was under the influence of pills, and that in his opinion the defendant "was under the influence of either pills or alcohol." Although the court erred in submitting to the jury the violation of driving under the influence of drugs, the error was not prejudicial since the evidence was overwhelming of defendant's violation of the following statutes: (1) proceeding on the highway in the wrong direction in violation of G.S. 20-165.1, and (2) driving under the influence of alcohol in violation of G.S. 20-138.

APPEAL by defendant from Walker (Hal H.), Judge. Judgment entered 27 July 1981 in Superior Court, FORSYTH County. Heard in the Court of Appeals 26 May 1982.

Defendant was convicted as charged of involuntary manslaughter. He pled guilty to charges of simple possession of marijuana and no operator's license. He appeals from the judgment imposing a sentence of a maximum and minimum of three years in prison. The parties stipulated to the following: Elizabeth Montgomery Warden died on 6 December 1980 as a result of a collision of her car with the defendant's automobile in which she received head and chest injuries which were a direct cause of death; approximately 18 grams of marijuana were found on defendant on 6 December 1980; and a blood test taken of defendant's blood showed .01 percent of alcohol by weight in defendant's bloodstream on 6 December 1980 at approximately 3:00-3:30 a.m.

State v. Atkins

### STATE'S EVIDENCE

At trial the State presented the testimony of Richard Kinzer who was an eyewitness to the accident occurring at 2:45 a.m. on 6 December 1980. Kinzer was turning onto an exit ramp from Highway 52, a four-lane road. The deceased, Elizabeth Warden, passed Kinzer's exiting car and was hit head-on by defendant's car, traveling on the wrong side of the road. After the collision, Kinzer determined that Ms. Warden was dead and went to defendant's car. He smelled alcohol on defendant's breath, and it was his opinion that defendant was under the influence of alcohol or drugs. Defendant was struggling to release his foot from the wreckage and appeared unconcerned when Kinzer informed him that defendant had killed Ms. Warden.

State Trooper Robert Compton investigated the accident. He found 10-12 beer cans around defendant's car and a bag of marijuana in defendant's pocket. He stated that it was his opinion that defendant was under the influence of alcohol or drugs at the time of the collision. A blood alcohol test performed at 4:40 a.m., about two hours after the accident, showed .01 percent alcohol. Compton testified that he saw defendant again in the Clerk's office on 7 March 1980, but defendant was not under arrest at that time. Defendant told Compton then that he had consumed four or five beers on the night of the accident.

### DEFENDANT'S EVIDENCE

Defendant presented the testimony of Roger Ayers with whom defendant worked on a construction site. Ayers, his brother and defendant rode together to and from work and the Ayers brothers had left beer cars in defendant's car on the day before the collision. Defendant testified that on the evening in question, he drank two beers with Sue O'Neal, a friend of his, and then went to the hospital to see his girl friend, Sandy Ayers. Ms. Ayers testified that she did not smell alcohol on defendant's breath. After leaving the hospital, defendant was unable to remember what happened in regard to the collision. He stated that he had not smoked any marijuana that evening. As a result of the accident, defendant had a broken bone in his leg, a crushed ankle, severe damage to his kneecap and stitches in his chin.

*Attorney General Edmisten by Assistant Attorney General Thomas H. Davis, Jr., for the State.*

*Pfefferkorn & Cooley by Jim D. Cooley for defendant appellant.*

CLARK, Judge.

Involuntary manslaughter is defined as the unintentional killing of another person without malice by some unlawful act not amounting to a felony or naturally dangerous to human life or by an act or omission constituting culpable negligence. *State v. Wilkerson,* 295 N.C. 559, 247 S.E. 2d 905 (1978). Culpable negligence may arise from the "intentional, wilful or wanton violation of a statute or ordinance, designed for the protection of human life or limb, which proximately results in . . . death . . . ." *State v. Cope,* 204 N.C. 28, 31, 167 S.E. 456, 458 (1933). The trial court instructed the jury in the case before us that it should consider whether defendant violated any one of the following statutes: proceeding on the highway in the wrong direction in violation of G.S. 20-165.1; driving under the influence of alcohol in violation of G.S. 20-138; or driving under the influence of drugs in violation of G.S. 20-139. A wilful violation of any one of these statutes would constitute culpable negligence if that violation was the proximate cause of Ms. Warden's death.

The judge charged the jury on the three possible statutory violations. There was ample evidence presented on the driving in the wrong direction and the driving under the influence of alcohol violations. Defendant argues, however, that there was insufficient evidence concerning the driving under the influence of drugs violation and that it was error for the judge to charge the jury on this issue. The evidence concerning the drug use consisted of the bag of marijuana found on defendant and the opinion testimony of Kinzer, the eyewitness to the accident. Kinzer testified:

> "In my opinion he [the defendant] was under the influence of either pills or alcohol. I've had some experience in determining whether someone is under the influence of pills because in my job every weekend, pumping gas, I see kids come up and down Stratford Road popping pills and drinking beer one after each other. In response to your question as to whether I observed anybody popping pills this particular evening on

US-52, it wasn't that. After you see enough of it, you can recognize it. It's like a drink, if you take one, you got to have another."

Our courts have held that a lay witness who has personally observed the individual is competent to testify whether or not in his opinion that person was under the influence of drugs. *State v. Lindley*, 286 N.C. 255, 210 S.E. 2d 207 (1974); *State v. Cook*, 273 N.C. 377, 160 S.E. 2d 49 (1968). However, the cases which have allowed opinion testimony regarding drugs have done so on the basis of much stronger indications of drug use. For example, in *State v. Lindley, supra*, the officer observed defendant's erratic driving, his personal demeanor, a white substance on his lips, his pinpoint pupils, the absence of alcohol on his breath, his lack of muscular coordination, his mental stupor, and the way he walked, acted and talked. He also interrogated defendant to ascertain whether there might have been other causes of defendant's condition. In the case before us we do not believe the evidence would have supported an independent finding of driving under the influence of drugs. There was no evidence of any physical manifestations of drug intoxication or of any odor of marijuana smoke in the car.

The trial court erred in submitting to the jury the violation of G.S. 20-139, driving under the influence of drugs. The question is whether the error is prejudicial or harmful so as to result in the granting of a new trial. The error was harmless if it could not have affected the result. *State v. Milby and State v. Boyd*, 302 N.C. 137, 273 S.E. 2d 716 (1981); *State v. Stanfield*, 292 N.C. 357, 233 S.E. 2d 574 (1977); *State v. Cottingham*, 30 N.C. App. 67, 226 S.E. 2d 387 (1976); G.S. 15A-1443(a). The test of harmless error must be applied on a case-by-case basis.

Applying the test to the case *sub judice*, we find the evidence of defendant's guilt on the involuntary manslaughter charge was overwhelming: he drove on the wrong side of a divided four-lane highway, traveling at 55-60 m.p.h., and hit Mrs. Warden's car head on, killing her; after the accident defendant was "loud and boisterous" at the scene and at the hospital but seemed to be in no pain; he smelled of alcohol, his eyes were red, and there were beer cans in and around the car; defendant admitted drinking two or three beers that evening; when told he had

killed someone, defendant did not seem to care. We conclude that there was no reasonable possibility that error in submitting the G.S. 20-139 violation to the jury might have contributed to the defendant's conviction. We again note that the error in the instructions is not trivial or technical or merely academic but is nonprejudicial because the evidence of defendant's intentional, wilful or wanton violation of the law is so strong that it would be a vain act to reverse and remand for a new trial. We have carefully considered defendant's other assignments of error, and we find no prejudicial error.

No error.

Judges WEBB and WHICHARD concur.