STATE OF NORTH CAROLINA v. LAWRENCE LEE HEFLER

No. 8226SC433

(Filed 1 February 1983)

1. Automobiles and Other Vehicles § 113.1— involuntary manslaughter—culpable negligence—sufficiency of evidence

The evidence was sufficient for the jury to find that defendant was culpably negligent in striking a pedestrian with his automobile so as to support his conviction of involuntary manslaughter where it tended to show that, as he was leaving an apartment complex, defendant struck the victim while he was jogging in a parking lot extending from the left side of the road; the area was well lighted and the victim was wearing fluorescent gloves; defendant had been drinking beer and taking drugs earlier in the evening; and defendant struck a Volkswagen and barely missed a trash dumpster seconds before striking the victim and then collided with an automobile on the left-hand side of the road immediately after the victim was injured.

State v. Hefler

**2. Homicide § 1.1— year and a day rule—inapplicability to manslaughter**

    The "year and a day rule" applies only to murder.cases and does not apply to the crime of manslaughter. Therefore, defendant could properly be convicted of involuntary manslaughter where the victim died 14 months after being struck by defendant's automobile.

**3. Automobiles and Other Vehicles § 114— involuntary manslaughter—instructions—reckless driving—driving on wrong side of highway**

    The evidence in an involuntary manslaughter case was sufficient to support the trial court's instructions on reckless driving in violation of G.S. 20-140(b) and driving on the wrong side of the highway in violation of G.S. 20-146 where it tended to show that defendant struck the victim with an automobile while the victim was jogging in a parking lot extending from the left side of the road; the area was well lighted and the victim was wearing fluorescent gloves; defendant had been drinking beer and taking drugs earlier in the evening; defendant struck a Volkswagen and barely missed a trash dumpster seconds before striking the victim; and defendant collided with an automobile on the left-hand side of the road immediately after the victim was injured. Assuming that there was insufficient evidence to support the court's instructions on driving at a speed greater than was reasonable and prudent under the existing conditions in violation of G.S. 20-141(a) and failing to decrease speed to avoid a collision in violation of G.S. 20-141(n), such instructions could not have affected the result and did not constitute prejudicial error.

**4. Constitutional Law § 31— denial of motion for expert witness at State's expense**

    In a prosecution of defendant for involuntary manslaughter by striking the victim with an automobile, the trial court did not abuse its discretion in the denial of defendant's motion that the State provide him with funds to employ a medical expert to determine whether medical personnel at the hospital in which the victim died were guilty of gross negligence where there was plenary evidence that the victim's head injury resulting from defendant's wrongdoing was a contributing cause of death, since neither negligent treatment nor neglect of an injury will excuse a wrongdoer unless the treatment or neglect was the sole cause of death.

APPEAL by defendant from *Snepp, Judge.* Judgment entered 25 September 1981 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 9 November 1982.

    From a jury verdict finding the defendant, whose automobile struck and killed a pedestrian, guilty of involuntary manslaughter and a judgment committing defendant to five years imprisonment, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Fred R. Gamin, for the State.*

*Assistant Public Defender Eben Rawls, for defendant appellant.*

BECTON, Judge.

The defendant raises the following issues on appeal: (1) whether the trial court should have allowed defendant's motion to dismiss because there was no evidence of culpable negligence; (2) whether the trial court should have allowed defendant's motion to dismiss because the victim died over a year and one day after sustaining injuries incurred when defendant's car collided with him; (3) whether the trial court erred in instructing the jury on involuntary manslaughter and death by vehicle; and (4) whether the trial court abused its discretion in denying the defendant's motion for an expert witness. After careful consideration, we conclude that defendant received a fair trial free of prejudicial error.

## CULPABLE NEGLIGENCE

[1]    At the close of the State's case, defendant chose to present no evidence and then moved to dismiss on the ground that there was insufficient evidence of culpable negligence to submit the charge of involuntary manslaughter to the jury. Involuntary manslaughter has been defined as "the unlawful killing of a human being unintentionally and without malice but proximately resulting from the commission of an unlawful act not amounting to a felony, or some act done in an unlawful or culpably negligent manner. . . . " *State v. Williams,* 231 N.C. 214, 215-16, 56 S.E. 2d 574, 574-75 (1949). The trial court instructed the jury on four possible unlawful acts: driving without due caution and circumspection and at a speed or in a manner so as to be likely to endanger any person in violation of N.C. Gen. Stat. § 20-140(b) (1981); driving at a speed greater than is reasonable and prudent under the conditions then existing in violation of N.C. Gen. Stat. § 20-141(a); failing to decrease speed to avoid colliding with any person in violation of N.C. Gen. Stat. § 20-141(m) (1978); and failing to drive on the right side of the highway in violation of N.C. Gen. Stat. § 20-146 (1978). The court then instructed the jury that there was no evidence of an intentional violation of any of these

statutes, but that the jury could find culpable negligence if the inadvertent or unintentional violation of a statute was "accompanied by recklessness [or] probable consequences of a dangerous nature, when tested by the rule of reasonable foresight, amounting altogether to a thoughtless disregard of the consequences or a heedless indifference to the safety of others." Considered in the light most favorable to the State, the evidence was sufficient to go to the jury. The trial court, therefore, correctly denied defendant's motion to dismiss the manslaughter charge. The facts which support our conclusion follow.

On the evening of 18 January 1980, defendant and Herbert Gerald Horton, Jr., were at Horton's apartment drinking beer and taking Quaaludes. Herbert testified that he drank at least two six-packs of beer, and that defendant "was drinking right along with" him. The two left the apartment between 8:30 and 9:00 p.m. and drove to Sun Valley Apartments located off Arrowood Road in Charlotte.

They visited a friend there for approximately one-half hour, and drugs were used during the visit. Upon leaving the apartment, defendant, who was driving, hit a Volkswagen and then barely missed a trash dumpster. Defendant then swerved to the left and struck James Stevens as he was jogging in a parking lot which was on the left side of the road. Stevens was tossed to the left, and defendant then collided with a car driven by James Sledge, as it was entering the apartment complex on Lodge South Circle. Sledge testified that he observed a jogger coming toward him "well right" of the path of his car. The jogger was wearing dark shorts, a light jersey, and large fluorescent gloves. Sledge then saw a car swerve directly behind the jogger. He assumed "that it was just somebody playing games." The car hit the jogger and then collided with Sledge's car in Sledge's lane of travel. A resident of the apartment complex heard the collision and ran to investigate. He observed defendant getting out of his wrecked vehicle and heard defendant say that he was going "to blow this place." Defendant then ran from the scene. He was arrested three days later and charged with "hit and run."

A Charlotte policeman, who arrived at the scene of the accident around 9:50 p.m., testified that he observed two cars on the righthand side of Lodge South Circle. The fronts of both cars

were wrecked. He testified that Lodge South Circle appeared to be the width of a normal two-lane road where the two vehicles were situated, but that there was no center line on the road. Further testimony revealed that there were three streetlights located on the right side of Lodge South Circle; that the complex was well-lighted on the night of the collision; that there were two speed bumps in the road leaving the complex before one reaches the dumpster and one after the dumpster, and that defendant left the complex "quick" driving at a speed of 30 to 35 miles per hour.

Notwithstanding these facts, the defendant cites numerous cases in support of his contention that there was insufficient evidence of culpable negligence. A close examination of the cases cited reveals factual distinctions. In *State v. Tingen*, 247 N.C. 384, 100 S.E. 2d 874 (1957), and *State v. Becker*, 241 N.C. 321, 85 S.E. 2d 327 (1955), the victims were walking across the street at night and were struck by defendants as they were driving in their proper lane of travel. In *State v. Roop*, 255 N.C. 607, 122 S.E. 2d 363 (1961), the evidence showed that defendant's car was only two feet in the left lane when the accident occurred. In *State v. Hancock*, 248 N.C. 432, 103 S.E. 2d 491 (1958), the physical evidence showed that the collision occurred in defendant's proper lane of travel. Finally, in *State v. Massey*, 271 N.C. 555, 157 S.E. 2d 150 (1967), there was conflicting evidence as to which side of the street defendant was driving on at the time of the collision.

In *State v. Freeman*, 31 N.C. App. 93, 228 S.E. 2d 516, *disc. review denied*, 291 N.C. 449, 230 S.E. 2d 766 (1976), we held that the trial court properly ruled that there was sufficient evidence of culpable negligence to take the case to the jury on the charge of manslaughter. There the State's evidence showed that defendant's wrecked automobile was found against a bridge abutment on the left-hand side of the roadway; that a passenger in defendant's car was killed in the accident; that an odor of alcohol was detected about the defendant's person; and that defendant testified that he had taken some Valium tablets and had drunk a few beers before the accident. In light of our decision in *Freeman* and the evidence in this case, we find no error in the denial of defendant's motion for dismissal in the matter now before us. The evidence clearly supports a finding that the defendant violated one or more safety statutes and that the violation(s) constituted culpable negligence.

## THE "YEAR AND A DAY" RULE

[2] The victim was taken to the hospital after the collision where he remained unconscious until his death on 16 March 1971. An autopsy revealed evidence of a severe head injury. The medical examiner who performed the autopsy testified that in his opinion, "the immediate cause of death was broncho-pneumonia as a complication of severe head injury, which was the underlying, or remote, cause of death." The attending neurosurgeon testified that the victim "died as a result of his head injury, unequivocally."

At the close of the evidence defendant also moved for dismissal because the victim died approximately 14 months after having been struck by defendant's automobile. Defendant contends that under the common law "year and a day" rule, he could not be charged with manslaughter. In an early North Carolina case applying this rule, our Supreme Court reasoned that "if death did not take place within a year and a day of the time of receiving the wound, the law draws the conclusion that it was not the cause of death; and neither the court nor jury can draw a contrary one." *State v. Orrell*, 12 N.C. 139, 141 (1826). The defendant in *Orrell* was found guilty of murder. In fact, in all the North Carolina cases discussing this rule, the defendants were convicted of murder. *See, State v. Pate*, 121 N.C. 659, 28 S.E. 354 (1897); *State v. Haney*, 67 N.C. 467 (1872); *State v. Baker*, 46 N.C. 267 (1854); *State v. Shepherd*, 30 N.C. 195 (1847). This Court is not predisposed to extend the application of this rule to the crime of manslaughter, particularly in light of growing authority that the rule has outlived its usefulness. *See*, Annot., 60 A.L.R. 3d 1323 (1974), and cases cited therein. Since the era in which the doctrine originated, the advance of medical science and improvement of diagnostic skills relative to the prolongation of human life obviate the need for this rule. *See*, Note, *Criminal Law—Homicide— Death Resulting More Than a Year and a Day After Assault*, 40 N.C.L. Rev. 327 (1962). Consequently, defendant's motion to dismiss the manslaughter charge based on the common law "year and a day" rule was properly denied.

## JURY CHARGE

[3] Defendant assigns error to the trial court's instructions to the jury on the charges of involuntary manslaughter and death by

vehicle. He first argues that the trial court committed reversible error in charging the jury on the following four statutory violations: driving without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property in violation of G.S. § 20-140(b); driving at a speed greater than is reasonable and prudent under the conditions then existing in violation of G.S. § 20-141(a); failing to decrease speed to avoid colliding with any person in violation of G.S. § 20-141(m); and failing to drive on the right side of the highway in violation of G.S. § 20-146. Defendant argues that there was insufficient evidence to support any of the statutory violations.

The evidence was uncontradicted that on the evening of 18 January 1980 defendant struck the victim while he was jogging in a parking lot extending from the left side of the road; that the area was well lighted and the victim was wearing fluorescent gloves; that defendant had been drinking beer and taking drugs earlier in the evening; that he struck a Volkswagen and barely missed a trash dumpster seconds before striking the victim and that he collided with an automobile on the left-hand side of the road immediately after the victim was injured. This evidence clearly supports a violation of driving on the wrong side of the road and reckless driving.

Assuming, *' rguendo*, that there was insufficient evidence to charge the jury on the two speeding violations, we find no prejudicial error. Their submission could not have affected the result. *See, State v. Atkins,* 58 N.C. App. 146, 292 S.E. 2d 744, *disc. rev. denied and appeal dismissed,* --- N.C. ---, --- 295 S.E. 2d 480 (1982).

Defendant further argues that the trial court did not adequately explain culpable negligence or the difference between involuntary manslaughter and death by vehicle. We hold that the court fully explained culpable negligence and gave instructions on both charges consistent with the Pattern Instructions, N.C.P.I.—Criminal 206.55.

### MOTION FOR EXPERT WITNESS

[4] At the beginning of the trial, defendant filed a motion requesting that the case be continued to allow him time to consult a

medical expert in order "to determine whether the acts and omissions of the medical personnel at Charlotte Memorial Hospital amounted to gross negligence." Defendant further requested that the State provide him with funds to pay this expert. The trial court denied the motion, and defendant has assigned error.

N.C. Gen. Stat. §§ 7A-450(b) and 7A-454 (1981) require that expert assistance be provided "only upon a showing by defendant that there is a reasonable likelihood that it will materially assist the defendant in the preparation of his defense or that without such help it is probable that defendant will not receive a fair trial." *State v. Gray*, 292 N.C. 270, 278, 233 S.E. 2d 905, 911 (1977). The appointment of such an expert "depends really upon the facts and circumstances of each case and lies, finally, within the discretion of the trial judge." *Id.* at 277, 233 S.E. 2d at 910-911. *See, State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976).

The trial court here did not abuse its discretion in denying defendant's motion for expert assistance. Expert testimony about the alleged negligence of medical personnel at Charlotte Memorial Hospital would not excuse defendant's wrongdoing in light of evidence clearly showing that the head injury directly contributed to the victim's death. "[O]ne can be guilty of involuntary manslaughter whenever his culpable negligence is *a* proximate cause of the victim's death." (Citations omitted.) *State v. Ellis*, 25 N.C. App. 319, 320, 212 S.E. 2d 909, 910 (1975). "There may be more than one proximate cause and criminal responsibility arises when the act complained of caused or directly contributed to the death." *State v. Cummings*, 301 N.C. 374, 377, 271 S.E. 2d 277, 279 (1980). Further, improper or unskilled treatment by attending physicians is no defense for one who has inflicted injury necessitating treatment. *State v. Jones*, 290 N.C. 292, 225 S.E. 2d 549 (1976). "Neither negligent treatment nor neglect of an injury will excuse a wrongdoer unless the treatment or neglect was *the sole cause of death.*" *Id.* at 299, 225 S.E. 2d at 552.

These rules apply to the situation *sub judice*. There was plenary evidence that the head injury resulting from defendant's wrongdoing was a contributing cause of death.

We find no error in the court's rulings and instructions.

No error.

Judges HEDRICK and WEBB concur.