UNITED STATES, Appellee

v.

Lawrence C. TAYLOR, Sergeant U.S.
Marine Corps, Appellant.

No. 95–0543.
Crim. App. No. 92 1364.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 30, 1996.

Decided Aug. 13, 1996.

For Appellant: *Lieutenant ·Kathryn L. Clune,* JAGC, USNR (argued); *Lieutenant D. Jacques Smith,* JAGC, USNR (on brief).

For Appellee: *Lieutenant Kevin L. Flynn,* JAGC, USNR (argued); *Colonel Charles Wm. Dorman,* USMC, and *Commander D.H. Myers,* JAGC, USN (on brief); *Colonel J. Composto,* USMC, and *Major Laura L. Scudder,* USMC.

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, appellant was convicted by members of violation of a lawful order and involuntary manslaughter, in violation of Articles 92 and 119, Uniform Code of Military Justice, 10 USC §§ 892 and 919, respectively. Appellant was sentenced to a dishonorable discharge, 1 year's confinement, total forfeitures, and reduction to the lowest enlisted grade. The convening authority reduced the findings of guilty under Article 119 to negligent homicide, in violation of Article 134, UCMJ, 10 USC § 934, and approved the sentence after mitigating the confinement to time served and changing the dishonorable discharge to a bad-conduct discharge. The Court of Criminal Appeals affirmed the approved findings and sentence in a lengthy unpublished opinion. We granted review of the following issue:

> WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ERRED WHEN THEY FOUND THAT THE MILITARY JUDGE PROPERLY EXCLUDED EVIDENCE OF NEGLIGENT MEDICAL CARE GIVEN TO THE VICTIM.

We hold that the Court of Criminal Appeals committed prejudicial error in holding that the military judge properly excluded evidence of negligent medical care given to the victim and did not submit the issue of an intervening cause to the members.

## FACTS

On March 8, 1991, while conducting water survival training, appellant was in direct supervision of Private Danilo A. Marty, Jr. During the training, PVT Marty experienced extreme difficulty and exhaustion in attempting to swim across a pool wearing his combat gear. Appellant was in position on a flotation device to lift Marty up and, in fact, did lift him up but then released him. When Marty cried for help, appellant told him that he had "to make it on [his] own." After Marty sank three times, appellant ordered the other recruits to pull Marty's body from the pool. Appellant checked Marty who was unconscious and found no pulse or respiration.

A response team consisting of one doctor, one nurse, and two corpsmen arrived at the scene. The Government's brief describes what happened next as follows:

> In essence, the combination of one doctor, one nurse, and two corpsmen pushed the wrong buttons on the defibrillator, preventing it from producing an electric shock; the breathing apparatus was missing a necessary valve; the team was unable to intubate Marty because of weak batteries on the laryngoscope; they were unable to locate a stylet which was necessary for proper functioning of an endotracheal tube; they placed Marty backwards on the gurney, reducing the efficacy of manual chest compressions (CPR) because of the spongy surface. Finally, the gurney was placed in the ambulance backwards, where it was unstable, causing the ambulance physician to withhold additional defibrillation out of fear of electrocuting others.... Basic CPR was continually administered virtually during the entire time despite the failure of the advanced medical team to achieve any progress. At

the hospital, Marty responded to defibrillation with rhythm, indicating that his heart was still capable of electrical activity, but not mechanical activity....

Answer to Final Brief at 5.

The autopsy revealed that Marty's lungs were almost completely full of water and that he had suffered cardiac arrhythmia.

At the investigation under Article 32, UCMJ, 10 USC § 832, into this incident, Doctor Donald Arthur, a specialty advisor in emergency medicine, Department of the Navy, Bureau of Medicine and Surgery, had testified concerning his review and report on the adequacy of the medical treatment provided to the victim. The report of Dr. Thomas Neuman containing "similar opinions and results" was received as evidence.

Later, at a session under Article 39(a), UCMJ, 10 USC § 839(a), the Government made a motion *in limine* to exclude any evidence of medical negligence. In response to this motion, defense counsel stated his intention of calling Doctors Neuman and Arthur on the issue of medical negligence by the attending medical personnel.

Both doctors had written reports which were highly critical of the emergency team's actions at the scene. Dr. Arthur would have testified that the team's equipment was poorly maintained; that the team had misused that equipment; that the procedures followed were improper; and that if the team had acted responsibly, PVT Marty may have been resuscitated. Dr. Neuman concurred, stating that but for the failures of the emergency team, "there would have been a high probability of survival...."

The Government argued that appellant was not relieved of responsibility for causing harm to PVT Marty because of medical malpractice unless the harm resulted solely from that malpractice. The Government further argued that because the doctors were unwilling to testify that the medical team's inaction was the "sole cause" of PVT Marty's death, their testimony was irrelevant. The military judge granted the Government's motion and found that "[t]he autopsy report indicates that the proximate cause of death was

drowning which was initiated by cardiac arrhythmia" and that "no relevant evidence was presented which indicated that the victim's death was exclusively the result of the attending medical personnel's negligence." * The military judge explained:

> For medical evidence of negligence to be admissible on the issue of proximate causation, it must rise to the level of being gross negligence so as to have "turned aside the course of the victim's probable recovery and have been the sole cause of the victim's death." *U.S. v. Gomez,* 15 MJ 954 (ACMR).

The Court below adopted the reasoning of the judge that neither Doctor Arthur nor Doctor Neuman would have testified that "inadequate" medical care "was the sole cause of Private Marty's death." Unpub. op. at 6, 15.

The judge thought that Doctors Burns and Wagner would testify that the cause of death was "cardiac arrhythmia which initiated the drowning." The judge did not address what reasonable medical care at poolside may have accomplished.

In response to a question from the judge, Dr. Delroy Hire, USN, testified: "Their [Doctors Burns and Wagner] contention is, if I understand their contention, is that the myocarditis precipitated an arrhythmia prior to, and initiating the drowning." The judge thought the arrhythmia only "precipitated the involuntary breathing of water into the system" and thus "the drowning."

Before this Court the Government argues that medical malpractice will be an intervening cause only if it constitutes the sole cause of death or is a substantial cause of death. *See generally State v. Sauter,* 120 Ariz. 222, 585 P.2d 242 (1978); *State v. Hefler,* 60 N.C.App. 466, 299 S.E.2d 456 (1983), *quoting State v. Jones,* 290 N.C. 292, 299, 225 S.E.2d 549, 552 (1976); *State v. Bennis,* 457 N.W.2d 843, 845 (S.D.1990).

---

\* The document containing the Military Judge's Findings of Fact and Conclusions of Law dated 22 October 1991 was not included in the Record of Trial immediately before the authentication

## DISCUSSION

■ In *United States v. Woolheater,* 40 MJ 170, 173 (1994), this Court addressed the Sixth Amendment right to introduce evidence, stating:

> This Court has recognized the defendant's right of access to witnesses and evidence. *See United States v. Simmons,* 38 MJ 376 (CMA 1993). But access alone is not enough. The defendant has the right to present legally and logically relevant evidence at trial. *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *United States v. Kelly,* 39 MJ 235, 237 (CMA 1994) ("Unlike other jurisdictions, the military criminal justice system has not limited *Ake* to psychiatric assistance ... or to capital cases."). *Cf. United States v. Burks,* 36 MJ 447 (CMA) (no right to admission of anonymous letter confessing to crime), *cert. denied,* 510 U.S. 866, 114 S.Ct. 187, 126 L.Ed.2d 146 (1993); *United States v. Hayes,* 36 MJ 361 (CMA 1993) (evidence that children tested positive for sexually transmitted disease not relevant when there is no connection between dates of testing and dates of offenses). While the Constitutional right to present defense evidence is a "fundamental" right, *Chambers v. Mississippi, supra,* it is not absolute and may yield to policy considerations such as the interest in the orderly conduct at trials. *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

The court below is correct that the judge exercises a " 'gatekeeper' function" at trial. Unpub. op. at 13. However, in this case, there was a dispute as to the degree of care exercised at poolside by the medical reaction team. This degree of care bears directly on the question of causation, an element of the crime of negligent homicide. *See* ¶ 85b(2), Part IV, Manual for Courts–Martial, United States (1995 ed.). Nevertheless, the judge granted the "government motion *in limine* to

---

page as it should have been. Rather it was attached to the record on motion granted by the court below.

exclude evidence of the nature of the care provided by the emergency medical team." *Id.* at 4. By doing so he removed from the factfinder the question of whether there was a sufficient intervening cause to excuse appellant from culpability in the victim's death.

As to the impact of the degree-of-care evidence, this Court in the seminal case of *United States v. Cooke,* 18 MJ 152, 154 (1984), quoting with approval the following from R. Perkins, *Criminal Law* 698–701 (2d ed.1969), remarked:

> It must not be assumed that negligence of the deceased or of another is to be entirely disregarded. Even though the defendant was criminally negligent in his conduct it is possible for negligence of the deceased or another to intervene between his conduct and the fatal result in such a manner as to constitute a superseding cause, completely eliminating the defendant from the field of proximate causation. This is true only in situations in which the second act of negligence *looms so large* in comparison with the first, that the first is not to be regarded as *a substantial factor* in the final result. . . .

(Footnote omitted; emphasis added); *see also United States v. Reveles,* 41 MJ 388, 394–95 (1995); *United States v. Lingenfelter,* 30 MJ 302, 307 (CMA 1990); *United States v. Dillon,* 18 MJ 340 (CMA 1984); *State v. Soucy,* 139 N.H. 349, 653 A.2d 561, 565 (1995)(In holding that the judge erred in excluding evidence concerning medical treatment, the court recognized that medical negligence is a superseding cause if it "is the sole substantial cause of the death," even if there was no gross negligence.).

The above-quoted language from Professor Perkins about intervening or superceding negligence is virtually unchanged in the Third Edition. R. Perkins & R. Boyce, *Criminal Law* 787 (3d ed.1982). Ordinarily, the judge should admit expert medical testimony to show the victim's condition on being removed from the water and the type of treatment that was given. *Baylor v. United States,* 407 A.2d 664, 669 (D.C.App.1979). In this instance, the judge did not allow the court members to determine whether the

medical negligence "loom[ed] so large" in comparison with appellant's act that he should not be held responsible. *United States v. Cooke,* 18 MJ at 155.

This case is distinguishable from *United States v. Reveles,* 41 MJ 388 (1995). The issue in *Reveles* was not admissibility of evidence but whether the defense made a sufficient showing of necessity to justify bringing a medical doctor from the United States to Germany to testify. In *Reveles,* we held the defense had not made a sufficient proffer to justify producing the medical doctor. The purpose of this doctor's testimony was to establish "a theoretical possibility" that negligent medical care had caused the victim's death. The defense did not request the testimony of the medical technicians who treated the victim or present the testimony of the medical expert who had been made available to the defense team. Because the defense did not establish that the expert would testify as proffered "when advised of the evidence in the case," we held that the proffer "fell short" of establishing an intervening cause of death. 41 MJ at 394–95.

■ The argument made by the Government before this Court that medical malpractice only breaks the chain if it is a substantial or sole cause of death does not apply to the factual situation here. That rule is only applicable when the defendant inflicts dangerous wounds designed to destroy life. That is not this case. *See Smith v. State,* 54 Ala. App. 237, 241, 307 So.2d 47, 50 (1975); *People v. McGee,* 31 Cal.2d 229, 240, 187 P.2d 706, 712–13 (1947); *People v. Dilworth,* 274 Cal.App.2d 27, 33, 78 Cal.Rptr. 817, 820 (1969); *State v. Tomassi,* 137 Conn. 113, 75 A.2d 67, 70 (1950); *Wright v. State,* 374 A.2d 824, 828 (Del.1977); *State v. McClain,* 256 Iowa 175, 189, 125 N.W.2d 764, 772 (1964); *Tibbs v. Commonwealth,* 138 Ky. 558, 128 S.W. 871, 873–74 (1910); *DeVaughn v. State,* 232 Md. 447, 194 A.2d 109, 113 (1963); *People v. Flenon,* 42 Mich.App. 457, 460–61, 202 N.W.2d 471, 474 (1972); R. Perkins & R. Boyce, *Criminal Law* 800, 801 (3d ed.1982).

Because of exclusion of evidence relating to the degree of care exercised by the response team, we conclude that prejudicial

error resulted as to the Charge. However, we conclude that this error did not affect the Additional Charge (disobedience).

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is reversed. The findings of guilty of the Charge and its specification and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge COX and Judges SULLIVAN and GIERKE concur.

EVERETT, Senior Judge (dissenting):

In my view, the court below did not err when it concluded that the military judge had properly excluded evidence of negligent medical care given to the victim. Admittedly, there can be circumstances under which intervening negligence on the part of those rendering medical assistance can be so extreme as to constitute an intervening cause that will absolve liability for homicide. For example, if someone is in the hospital for a minor leg injury and he receives an erroneous prescription that kills him, the person who inflicted the leg injury cannot be held liable for the homicide. The present case is far different, however, and is much more akin to the *Cooke* case where, in a prosecution for involuntary manslaughter, this Court concluded that there was no intervening cause. *United States v. Cooke*, 18 MJ 152 (1984).

In the present case, the victim was almost dead before he was pulled out of the water. While it is possible that excellent medical care might have prevented him from dying, it seems clear from the undisputed evidence offered by the prosecution that the maltreatment that he had received from appellant contributed substantially to his death. After all, the victim was limp when he was pulled out of the pool with no respiration, no pulse, and face and lips that there were blue or off-color. Even though appellant's conduct that induced this condition may have been only reckless or negligent—rather than intended to injure—the absence of extraordinary medical assistance did not constitute an intervening cause under these circumstances. The military judge recognized this and properly excluded the evidence. I would affirm the decision below which so held.