## 16411

STATE v. RACHELS

(61 S. E. (2d) 249)

*Messrs. Tinsley & McGowan* and *W. H. Nicholson,* of Greenwood, and *Blackwell, Sullivan & Wilson,* of Laurens, *for Appellant,*

*Mr. Hugh Beasley, Solicitor,* of Greenwood, *for Respondent.*

September 25, 1950.

Fishburne, Justice.

The appellant was convicted under an indictment charging him with reckless homicide, involving the death of Miss Eleanor Simmons, a student at Lander College at Greenwood, while traveling as a passenger on the Carolina Scenic Stages to her home at Cross Hill.

The statute which appellant was charged with violating reads as follows: "When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of reckless homicide." 1942 Code, Sec. 1616, Sub-section 29(a).

The only question presented by the appeal is whether the trial judge committed error in his refusal to grant appellant's motion for a directed verdict of not guilty, and his denial of the motion made for a new trial. It is contended that there was no direct or positive evidence to support the charge of reckless homicide; and it is further argued that the circumstantial evidence offered by the State failed to meet the required test applicable to such evidence in order to convict.

The death of Miss Simmons occurred on January 21, 1949, on a bridge which spans Cane Creek, in Laurens County, when a gasoline tanker-truck coming from the opposite direction and driven by appellant, Rachels, collided with the bus on which she was a passenger. Miss Simmons was sitting on the left side of the bus immediately behind the driver, Carl Hardin, and it was this point which received the blow from the tanker.

The accident occurred shortly after dark. It was misting rain, and was somewhat foggy; the roadway was described as wet and sloppy, the visibility low. The bus approached the Cane Creek bridge on a slight curve going toward Cross Hill. This bridge was 132 feet long and 18 feet wide, and its floor, like the highway, was paved with a tar and gravel composition. The public highway was two feet wider than the bridge.

Hardin, the bus driver, testified that as he neared the bridge he saw the lights of the tanker-trailer approaching from the opposite direction, a considerable distance away, and from his observation he concluded that he could cross the bridge before the tanker reached it,—that is, if the truck

was running at a reasonable rate of speed. The bus was moving at a rate of 30 miles an hour, and Hardin realized after he entered upon the bridge that the tanker would meet him before he could clear it. He then drove his bus as far to the right as possible, and the evidence shows that the body of the bus overhanging the wheels scraped every one of the nineteen concrete posts on the right-hand side of the bridge.

On each side of the bridge, as shown by the testimony and various photographs introduced in evidence, there is a concrete railing with 19 concrete posts measuring 10 by 12 inches, with connecting reinforced concrete railings. The posts rest upon and are set seven inches back of a concrete curbing running on each side. This curbing extends 10 or 12 inches above the floor level of the bridge. The clearance between the curbing left a bridge width of 18 feet. Hardin said that just before the tanker-trailer entered the bridge, it rapidly blinked its lights three times, which symbol is known among truck and bus drivers as indicating danger and that the vehicle is out of control. Realizing the imminence of peril, Hardin said that he attempted to increase his speed from 30 miles an hour in order to get off the bridge before the truck entered it, but the collision occurred before he cleared the bridge.

The tanker-truck driven by appellant was estimated to be between 40 and 45 feet in length. It was loaded to capacity with 4,000 gallons of gasoline, and the combined weight of cab, trailer, attached tanker and contents was approximately 36,000 pounds. The road upon which it traveled toward Cane Creek bridge was on a down grade, and when appellant reached the peak of the hill and started the descent toward the bridge one-fourth of a mile away, he was driving between 40 and 45 miles an hour. The road was straight, and he saw the bus with headlights burning approaching him, about 100 yards on the other side of the bridge.

Appellant had had five years experience in handling and driving this heavy type of transport equipment, and three

years experience in going back and forth on this particular road. He was thoroughly familiar with the road and the bridge, and with traveling conditions. At the rear end of the tanker there were two large wheels on each end of the axle; and it was equipped with ten wheels in all. The forward part of the tractor containing the cab, entered the bridge and safely passed the bus, but the left rear dual wheels of the truck struck the bus at the point on its left side just behind the driver's seat, crushing it in and knocking the left front wheel beneath the bus. The force of the blow was so terrific that the bus was thrown against the right hand concrete railing, completely breaking out three of the concrete posts and loosening two or three other posts. The bus, however, rolled on, clearing the bridge, and went 58 feet before it came to rest. The only concrete post left standing at the apparent location of the collision was the first one on the Cross Hill side of the bridge in the direction the bus was moving.

Following the impact, which it may be inferred occurred at a point about 16 feet from the Cross Hill end of the bridge, the heavy dual rear wheels of the tanker-truck broke loose and finally became completely detached at some point about 40 feet beyond the place where the collision occurred. Proceeding on their own momentum, they rolled about 100 feet, almost to the end of the bridge, and bounced clear over the railing.

Appellant Rachels knew that something had occurred at the rear end of the tanker, 35 or 40 feet behind him, but he did not know what the trouble was. When the rear wheels were ripped off, however, his air brakes were disconnected, and the vehicle with its rear end dragging proceeded on momentum to the end of the bridge, and on a slight ungrade 100 yards beyond, where it burst into flames, turned over on its side, and came to rest. Appellant and a companion who was riding with him managed to extricate themselves and escaped injury.

Highway patrolmen were summoned and reached the scene of the accident within about 30 minutes after it occurred. They took various measurements and made a minute examination of the situation. They testified, as did the sheriff of Laurens County, that on the first concrete post on the right-hand side of the tanker as it entered the bridge, and on the wire guard rail which connected with this post, there were fresh scrapings from a rubber tire, embedded in the wire mesh and adhering to the post.

It was testified that the cab portion of this transport vehicle was narrower than the rear end which was equipped with the dual wheels, and that the dual wheels extended beyond the forward wheels under the cab. These officers, by reasonable inference from the facts, drew the well-nigh inevitable conclusion, that when the tanker approached the bridge, which was two feet narrower than the road, it swung slightly to the left, and then to the right in order to avoid hitting the bus, but that this did not give the clearance for the dual wheels on the right rear end of the tanker. That these wheels, or the outside wheel, mounted and ran over the projecting seven-inch curb which constituted the base of the railing, scraping the wire guard rail and the first concrete post,—all of which, combining with the speed of the heavy vehicle, resulted in throwing the rear of the trailer violently to its left, striking the bus, and causing the instant death of Miss Simmons, who, as stated, was sitting immediately behind the driver on the left-hand side of the bus.

The combined width of the bus and tractor-trailer was 16 feet; that is, each had a width of eight feet. The bridge was only 18 feet wide; and, as stated the road was 20 feet wide. The appellant was thoroughly familiar with these physical conditions, from his three years experience on this highway. The bus driver, Hardin, had had four months experience as a bus driver, but had driven a bus on this particular road only two days.

The defense contends that the bus was the offending vehicle and that it ran into and collided with the rear end of

the tanker. But the physical evidence shows, as testified to by the investigating officers who reached the scene almost immediately after the accident, that each of the 19 concrete posts on the right-hand side of the bus in the direction in which it was moving, had been scraped by its body which overhung the wheels; showing or tending to show, that this vehicle had never swerved to the left. The body of the bus was painted red, and there were fresh scrapings of red paint on each post. From this evidence the jury could have reasonably concluded that the driver of the passenger bus, realizing his danger upon entering the bridge, had pulled as far to his right as it was possible to do in order to avoid a collision.

The appellant Rachels was an experienced driver of heavy transport vehicles. When he reached the peak of the hill overlooking Cane Creek bridge and started down grade, he was a quarter of a mile from the bridge and traveling at the rate of 45 miles an hour. He stated that even at that speed, he had this 36,000 pound vehicle under control, but that if the brakes were applied too strongly while traveling at that rate, the tank-trailer would jacknife and turn over; or else would have skidded dangerously on the wet pavement. However, he says that upon entering the narrow bridge from the wider road, and having seen the bus when it was 100 yards from the other end of the bridge, he did apply slight pressure to the brakes and reduced his speed somewhat below 40 miles per hour. Sitting up in the cab and passing the bus, he frankly stated that he did not know what had occurred behind him, and it was not until he escaped from the burning cab 100 yards from the bridge on the Greenwood side, that he learned of the accident. He testified throughout that he reached the bridge on the Cross Hill end before the bus entered from the Greenwood side. However, the jury was fully justified from the evidence in drawing a contrary conclusion.

The word "reckless," as used in the statute, has a clear and commonly understood meaning, so that one of ordinary intelligence is not left in doubt as to its meaning or purport. The statute, Code Sec. 1616, sub-section 29(a), provides for criminal liability when the homicide is caused by a reckless disregard of the safety of others, meaning thereby something more than the mere failure to exercise due care.

As a general rule, what constitutes reckless driving is to be determined from all the surrounding circumstances where the statute does not specifically declare what particular acts shall comprise the offense. What constitutes reckless driving under some conditions may not be such under other conditions. As a general rule, something more than mere negligence in the operation of a motor vehicle is necessary to constitute the offense of reckless driving. Generally, the offense denotes operation of a vehicle under such circumstances, and in such manner, as to show a willful or reckless disregard of consequences.

In another subsection of the statute, subsection 31 of Section 1616, recklessness has been defined as follows: "Any person who drives any vehicle in such a manner as to indicate either a willful or a wanton disregard for the safety of persons or property is guilty of reckless driving."

The trial judge read the foregoing subsection to the jury, and fully charged them in addition, that such reckless operation of a vehicle must be the proximate cause of death. He soundly instructed the jury: "Recklessness implies the doing of a negligent act knowingly. When a man actually acts negligently and he realizes that he is acting negligently, the law says he is reckless or willful and wanton, whichever term you prefer, they all mean the same thing, that is, the conscious failure to exercise due care."

As a general rule, the question what constitutes reckless driving is to be determined from all the surrounding circumstances where the statute denounc-

ing the offense does not specifically declare what particular acts shall constitute the offense. Accordingly, in determining the guilt of the accused, his manner of driving is to be considered with respect to the time when and the place where, the alleged violation occurred; the width, character and condition of the highway, weather conditions as to light or darkness, the position of other vehicles, the weight and load of the offending vehicle, the opportunity for observation and familiarity with the highway; and the chance of being able to stop or avoid a collision.

The test of recklessness, as stated, does not lie in speed alone, but in that and all other attendant circumstances which together show a reckless disregard of consequences.

The foregoing rules generally apply and are found discussed in Annotations, 99 A. L. R. 756, 86 A .L. R. 1273. And see 61 C. J. S., Motor Vehicles, § 609b, pages 700-701; 5 Am. Jur., Sec. 802, page 932.

We think the facts, positive and circumstantial, fully warranted the circuit judge in submitting this case to the jury on the issue of reckless driving. Appellant admits that he was thoroughly familiar and acquainted with all of the surroundings at Cane Creek bridge, knew the bridge was ahead of him when he was a quarter of a mile back, on a straight road, and saw the approaching bus at a point 300 feet ahead, on the opposite side of the bridge. He knew that he was driving on a down grade, a tractor-tanker loaded to capacity, with an overall weight of 36,000 pounds, at a speed of between 40 and 45 miles per hour, on a slippery pavement, with visibility low on account of the misty rain; and that these heavy transport vehicles under such circumstances were most difficult to control. Especially is this true when we consider the narrow bridge which he knew he was approaching, and that only a few inches of clearance would lie between him and the oncoming bus. All of these facts should have suggested caution on his part while approaching the bridge; and he should have had his heavy vehicle moving at such a rate of speed that he could easily have controlled it.

Under all the evidence, it was for the jury to determine whether he was driving the tanker, which was as long as an average railroad box car, at a reckless and dangerous rate of speed, indicative of disregard for the safety of others on the highway, and amounting to culpable and willful negligence.

It is further urged on appellant's behalf that the evidence points to the conclusion that Hardin, the bus driver, was solely responsible for the death of Miss Simmons by reason of his contributory negligence.

The negligence of a third person is not a defense to a prosecution for a homicide resulting from the operation of a motor vehicle, unless such negligence is the sole proximate cause. Such negligence, however, if it exists, may be considered on the issue of whether the accused was criminally negligent, or whether his conduct was the proximate cause of the homicide. *State v. Sussewell,* 149 S. C. 128, 146 S. E. 697; 5 Am. Jur., Sec. 796, page 930; 61 C. J. S., Motor Vehicles, § 663, page 778.

While, no doubt, the entire circumstances surrounding the homicide are properly for the consideration of the jury in determining whether or not the appellant was criminally liable, yet his criminal negligence if it existed cannot be wiped out from the fact that a third person was merely negligent.

This question was fully covered by the trial judge in the instructions he gave to the jury. And the jury evidently concluded, as they were warranted in doing under the evidence, that the negligence of the bus driver, if any, did not contribute as the sole proximate cause to the death of Miss Simmons.

Judgment affirmed.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.