2152

The STATE, Respondent v. James B. McCONNELL, Appellant.

(449 S.E. (2d) 778)

Court of Appeals

*Joseph F. Kent,* North Charleston, and *SC Office of Appellate Defense,* Columbia, *for appellant.*

*Atty Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M.Coombs, Jr.,*

and *Asst. Atty. Gen. William Edgar Slater, III,* Columbia, *Sol. Walter M. Bailey, Jr.,* Orangeburg, and *Sp. Sol. Robert S. Armstrong,* Hampton, *for respondent.*

Heard Jan. 12, 1994; Decided Mar. 7, 1994.

Amended & Ref. on Den. of Reh. July 21, 1994.

### ORDER TO WITHDRAW ORIGINAL OPINION AND SUBSTITUTE SUBSEQUENT OPINION AND TO DENY PETITION FOR REHEARING

Opinion No. 2152, filed March 7, 1994, in the above appeal is hereby withdrawn and the following opinion is substituted therefor.

After a careful consideration of the Petition for Rehearing, the Court is unable to discover that any material fact or principle of law has been either overlooked or disregarded and, hence, there is no basis for granting a rehearing. It is, therefore, ordered that the Petition for Rehearing be denied.

AND IT IS SO ORDERED.

/s/ William T. Howell, C.J.,
/s/ Curtis G. Shaw, J.
/s/ Jasper M. Cureton, J.

SHAW, Judge:

James B. McConnell was indicted August 9, 1990 for felony DUI following a motorcycle accident March 30, 1990 in which another rider, Tiffany Toft, suffered fatal injuries. The jury convicted McConnell of the lesser included offense of reckless homicide for which he was sentenced under the Youthful Offender Act. McConnell appeals. We affirm.

On March 30, 1990, McConnell, who was seventeen at the time, was drinking beer and alcohol in his home with a number of friends from school. Some of the friends went into the garage with McConnell and began to inquire about the motorcycle McConnell acquired several weeks earlier. McConnell started the motorcycle. With Tiffany Toft, who was sixteen, riding as passenger, McConnell then rode away. Shortly thereafter the friends heard a loud crash and ran approximately 600 feet to where the motorcycle crashed.

Toft suffered a grade-three closed head injury, multiple facial fractures, a basal skull fracture and other injuries from the accident. She subsequently died April 2, 1990. McConnell also suffered serious head injuries as well as extensive injuries to his left hip and right leg, and is currently in rehabilitation. McConnell has no recollection of the accident.

The motorcycle was travelling at a high rate of speed when it travelled through a stop sign and went approximately seventy-nine feet before striking a curb and crashed through a garage door of a house in the subdivision, leaving gouge marks in the driveway pavement. McConnell and Toft were thrown from the motorcycle, and both appeared to have struck a brick wall to the side of the driveway. Although Toft had been wearing a helmet, the helmet was apparently thrown off during the accident.

The two were taken to the hospital. At the hospital, samples of blood taken from McConnell approximately one hour after the accident reflected a blood alcohol level of .133. A sample taken from Toft at approximately the same time indicated a blood alcohol level of .025.

At trial, witnesses testified that McConnell and Toft were gone anywhere from less than one minute to five minutes before the accident. Two witnesses testified they could hear the motorcycle the entire time, while other witnesses testified they could not recall whether they heard the motorcycle the entire time.

Another witness, Tara Fry, was on the street where the accident occurred and saw the motorcycle travel past the stop sign at a high rate of speed. She could not, however, identify who was driving the motorcycle. A neighbor, Cynthia Lindenmeyer, heard the accident and heard the motorcycle rapidly changing gears just before the impact.

The defense offered the testimony of Ronald Brooks, as an expert witness in matters of motorcycles and motorcycle operation. Brooks described the specific control features of the motorcycle. When asked how to stop the motorcycle in this case Brooks explained the rider could have applied the front and rear brake, or in case of a malfunction, used the emergency switch near the throttle, or turned off the ignition. Brooks explained that a novice rider, at the first sign of losing control, would likely panic and latch down on the throttle.

Brooks testified it would take an experienced operator to move through multiple gear changes within the short distance from the stop sign to the garage door where the collision occurred. But Brooks went on to testify that a roaring of the motor could sound like gear changes.

The defense then inquired of Brooks to consider the lack of skid marks at or near the stop sign, the gouges in the driveway, and the apparent revving of the motorcycle just prior to the accident, along with Toft's inexperience with this motorcycle and neighborhood, to conclude whether McConnell or Toft was the driver of the motorcycle. The State objected, and the court refused to allow the opinion testimony.

The defense proffered Brooks' testimony. In the proffer, Brooks gave his opinion that the driver had no expertise whatsoever in handling the motorcycle, and therefore Toft was the likely driver. Brooks based this opinion on evidence the motorcycle was accelerating quickly just prior to impact, and evidence there was no indication the driver attempted to use the emergency cut-off switch or otherwise stop the motorcycle before the accident. In Brooks' opinion, McConnell, because he was familiar with the motorcycle, would have instinctively applied the brakes or cut-off switch.

In closing argument, the defense otherwise conveyed its theory of the case by pointing to evidence suggesting Toft was the driver. The defense attorney maintained the two were gone long enough to switch positions. He reminded the jury that a rider familiar with the motorcycle would be able to stop it by applying the brakes, applying the emergency switch, or turning off the ignition. The attorney also suggested that injuries to Toft at the front and back of her skull suggested she was in front of McConnell and cushioned him. Finally, the attorney suggested McConnell's hip and leg injuries were circumstantial evidence that he attempted to stop the motorcycle by pulling it over onto himself.

I.

On appeal, McConnell argues the trial court should have directed a verdict in his favor because the State failed to establish that McConnell was the driver of the motorcycle at the time of the accident, or alternatively that he was reckless. We disagree.

McConnell drove the motorcycle out of the driveway. Furthermore, although McConnell and Toft were not in sight, several witnesses testified they could hear the motorcycle the entire time, indicating it did not stop prior to the accident. It was proven by direct and indirect evidence sufficient for the jury to make a finding that he was the driver of the motorcycle. Although motions for a directed verdict should be granted when the evidence merely raises a suspicion of guilt, it is the trial judge's duty to submit the case to the jury if there is *any* evidence, direct or circumstantial, which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced. *State v. Irvin*, 270 S.C. 539, 243 S.E. (2d) 195 (1978).

Furthermore, this case is distinguishable from *In re Stacy Ray A.*, 303 S.C. 291, 400 S.E. (2d) 141 (1991), which McConnell cites for the proposition that the State may not rely simply on the fact of the accident itself to establish recklessness. In *Stacy Ray A.* there was no evidence of recklessness. *Id.* Stacy Ray A. was not under the influence of either alcohol or drugs at the time his car collided with a vehicle in the oncoming lane, and there was no evidence of speeding or of any other statutory violation.[1] *Id.* In the present case, evidence McConnell was intoxicated, was speeding and failed to obey a stop sign is sufficient to demonstrate recklessness.

## II.

McConnell also argues the trial court committed reversible error in not allowing Brooks to testify that, in his opinion, Toft was driving the motorcycle. We disagree.

McConnell's theory of the case was that although he was driving when the two left his house, he was not driving at the time of the accident minutes later. There was no evidence Toft was inclined to drive the motorcycle, nor was there evidence she and McConnell switched positions during the few minutes between the time they left the garage and when the accident occurred. The admissibility of expert testimony on a fact in issue is largely within the discretion of the trial judge. *Halbersberg v. Berry*, 302 S.C. 97, 394 S.E. (2d) 7 (Ct. App. 1990). Here, the question posed of Brooks was

---

[1] A statutory violation can be evidence of recklessness. *In re Stacy Ray A.*, 303 S.C. 291, 400 S.E. (2d) 141.

not whether an experienced or inexperienced driver was more likely operating the motorcycle immediately prior to the accident, but whether McConnell or Toft was operating it. The question of who was driving at the time of the accident was an ultimate fact for determination by the jury. There is no error in the exclusion of opinion evidence where all the facts are capable of being clearly detailed so that the jury may form the correct conclusion therefrom. *See Green v. Sparks*, 232 S.C. 414, 102 S.E. (2d) 435 (1958).

Further, although it has been held that a trial judge may, in his discretion, permit a qualified expert to testify as to his opinion on an ultimate issue before the jury,[2] we find the hypothetical question, as posed, failed to incorporate the necessary material facts. For expert opinion testimony regarding a hypothetical question to be admissible and of probative value, the question must contain substantially all of the material facts required to form an opinion. *Madden v. Cox*, 284 S.C. 574, 328 S.E. (2d) 108 (Ct. App. 1985). An expert witness must show that in formulating his opinion he has taken into consideration the material facts of the case being tried which are necessary to the formation of an intelligent opinion. *Young v. Tide Craft, Inc.*, 270 S.C. 453, 242 S.E. (2d) 671 (1978). As the question was posed, Brooks did not take into consideration one of the most relevant facts of the case, that being that McConnell had a blood alcohol level of .133 approximately one hour after the accident. Given the basis of Brooks' opinion, this evidence was clearly a material fact which should have been considered.

We further note McConnell was not deprived of advancing his theory that Toft was driving to the jury. Brooks was allowed to testify that a common reaction of a novice driver of a motorcycle such as this is to panic and latch down on the throttle at the first sign of losing control. This along with Brooks' other testimony and the evidence pointed out by McConnell's attorney in closing arguments clearly put the issue of who was driving before the jury.

Affirmed.

HOWELL, C.J., and CURETON, J., concur.

---

[2] *See Rutledge v. St. Paul Fire and Marine Insurance Co.*, 286 S.C. 360, 334 S.E. (2d) 131 (Ct. App. 1985).