2399

The STATE, Respondent v. Karen ROWELL, Appellant.

(467 S.E. (2d) 247)

Court of Appeals

*Assistant Appellate Defender, Robert M. Pachak,* of *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General T. Travis Medlock; Chief Deputy Attorney General Donald J. Zelenka;* and *Assistant Attorney General William Edgar Salter, III,* Columbia; and *Solicitor Ralph J. Wilson,* Conway, *for respondent.*

Heard Apr. 4, 1995.

Decided Oct. 16, 1995; Refiled Jan. 30, 1996.

## ORDER

*Per Curiam:*

After a careful consideration of this Petition for Rehearing, it is ordered that the Opinion and Dissent heretofore filed as Opinion No. 2399 on October 16, 1995, be withdrawn and the attached Opinion and Dissent be substituted therefor. The Petition for Rehearing is denied.

For the Majority:

/s/ William T. Howell, C.J.
/s/ Carol Connor, J.

For the Dissent:

/s/ Jasper M. Cureton, J.

CONNOR, Judge:

This case involves a tragic automobile-pedestrian accident in which two children were killed. The jury found Rowell, the driver of the automobile, guilty of two counts of reckless homicide. The trial judge sentenced her to five years, suspended on the service of three years, with two years probation. Rowell appeals the trial judge's denial of her directed verdict motion. We reverse and remand.

## I. ISSUE

Rowell appeals only the trial judge's refusal to direct a verdict in her favor. She moved for a directed verdict at the end of the state's case and renewed this motion at the close of all the evidence. She argues the state has not shown recklessness, an essential element of reckless homicide under S.C. Code Ann. § 56-5-2910 (1991),[1] which requires the state to prove death resulted from driving a vehicle "in reckless disregard of the safety of others." There is no issue concerning proximate cause in this case, as it is quite clear Rowells actions proximately caused the children's deaths.

## II. ANALYSIS

### A. Standard of Review

In reviewing the denial of a motion for directed verdict, we must determine whether any evidence exists which tends to prove the guilt of the accused, or from which her guilt may be fairly and logically deduced. *State v. Hicks*, 305 S.C. 277, 407 S.E. (2d) 907 (Ct. App. 1991); *State v. Edwards*, 298 S.C. 272, 379 S.E. (2d) 888, *cert. denied*, 493 U.S. 895, 110 S.Ct. 246, 107 L.Ed. (2d) 196 (1989) (where the state relies on circumstantial evidence, the test to survive a directed verdict motion is whether there is any substantial evidence which tends to prove the guilt of the accused). Moreover, we must consider all evidence in the light most favorable to the state. *State v. Simpson*, 275 S.C. 426, 272 S.E. (2d) 431

---

[1] This statute was amended effective August 31, 1994, to provide for the offense to be a felony, to include a nolo contendere plea, and to increase the maximum term of imprisonment from five to ten years. S.C. Code Ann. § 56-5-2910 (Supp. 1994). The amendment, however, is not applicable to the case before us because Rowell was convicted prior to its effective date.

(1980). Because trial judges must be concerned with the existence or nonexistence of evidence, not with its weight, if there is any direct or any substantial evidence, we must affirm the denial of a directed verdict motion. *State v. Venters*, 300 S.C. 260, 387 S.E. (2d) 270 (1990); *State v. Littlejohn*, 228 S.C. 324, 89 S.E. (2d) 924 (1955). However, where there is a failure of competent evidence tending to prove the offense charged, the trial judge should grant the motion. *Id.*

### B. Summary of Testimony[2]

When the accident occurred, Rowell was driving south on Wiley Drive, a two-way street in a residential area of North Myrtle Beach. Wiley Drive, which is 20-feet, 7-inches wide, did not have lines down the middle, nor on the sides, of the road. The accident occurred just after dusk. There were two street lights on the block where the accident occurred. A resident testified the lack of street lights in the area caused it to be quite dark at night. Two of the state's witnesses testified it was not so dark that you could not see.

Rowell's car crossed over the lane for oncoming traffic onto a grassy shoulder, striking five pedestrians, one of whom was holding an infant, walking north. Three-year-old Hank Tomlinson and twelve-year-old Erica Spon died from the injuries they received. Jennifer and Destiny Tomlinson, Hank's mother and sister, respectively, and Randi and Sarah Slaughter, who were sisters, survived.

Shortly before the accident, Alberta Kissell had driven through the area, travelling in the opposite direction from Rowell. She testified she observed three children on her right and saw a child pushing another child in a stroller on her left. Kissell "got in the middle of the road" and stopped and flashed her high beams to warn the children. As she proceeded north,

---

[2] Our review of the facts extends to reviewing any fact that tends to prove the guilt of the accused or from which her guilt may be fairly and logically deduced. In this case, the guilt or innocence of the accused hinges upon evidence or her *mens rea*. Accordingly we review all of the facts to determine whether or not they provide evidence of Rowell's *mens rea*. *Cf. State v. Lyle*, 125 S.C. 406, 411, 118 S.E. 803, 805 (1923) ("Since the exceptions are almost wholly directed to assignment of error in the admission and exclusion of evidence, a somewhat extended review of the evidentiary facts is essential to a proper understanding of the legal questions sought to be raised and to a fair appraisal of appellant's contentions as to the commission of prejudicial error.").

she saw Rowell's car turning onto Wiley Drive. She noticed Rowell was not speeding.

Sara Slaughter testified she, Jennifer, and Randi were in the middle of the street when Kissell's car passed. Jennifer and Randi testified their group was on the east side of the road when Kissell drove by. Sarah was holding Destiny, and Erica and Hank were walking on the opposite side of the street. Randi Slaughter testified that after Kissell's car passed, Jennifer Tomlinson directed Erica, who was pushing Hank in the stroller, to cross to the other side of the road.

Rowell, who is hearing impaired,[3] testified she thought she saw two small children on her right. She further testified that, thinking the left side of the road was clear, she tried to go around them by veering that way. Tragically, Rowell hit the group of pedestrians on her left.

The testimony concerning the location of the impact is conflicting. Eric Ayersman, an officer with the North Myrtle Beach Department of Public Safety who investigated the scene, testified the impact occurred on a grassy shoulder, two to four feet off the road. On the other hand, Rowell said she was still on the road and the stroller was right on the edge of the road when her car slid. She further recalled:

> It was, like, it was like they all came out of nowhere. You know, on the left it was very, very dark. It was darker than on the right. I could see the two kids, you know, if I had seen the two kids on the right. That's why I moved into the middle. But the part of that area where the accident happened is where it's very, very dark.

### C. *Mens Rea* in General

Courts have long accepted the idea that a criminal act must include the element of *mens rea*. The United States Supreme Court held:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a

---

[3] Rowell's car was equipped with mirrors on both sides. She testified this is the only additional requirement South Carolina imposes upon hearing impaired drivers.

consequent ability and duty of the normal individual to choose between good and evil.

*Morissette v. United States*, 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952) (conviction for conversion of government property reversed where intent was presumed from the act itself). *Mens rea* is the yardstick by which we measure criminal intent. "The required *mens rea* for a particular crime can be classified into a hierarchy of culpable states of mind in descending order of culpability, as purpose, knowledge, recklessness, and negligence," *State v. Jefferies*, 316 S.C. 13, 16, 446 S.E. (2d) 427, 430 (1994), *cert. denied,* — U.S. —, 115 S.Ct. 911, 130 L.Ed. (2d) 793 (1995) (citing *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed. (2d) 575 (1980)). The legislature may, of course, criminalize behavior without regard to intent or knowledge. *See, e.g., State v. Cribb*, 310 S.C. 518, 426 S.E. (2d) 306 (1992) (holding felony DUI does not require recklessness); *Guinyard v. State*, 260 S.C. 220, 195 S.E. (2d) 392 (1973) (affirming conviction under statute that prohibited having sexual intercourse with a patient or trainee at any state mental health facility despite defendant's claim that the victim's status was not known to him); *see generally State v. Jefferies* (determining the *mens rea* required for the crime of kidnapping in the absence of specific statutory language).

### D. Specific *Mens Rea* of Recklessness

The South Carolina legislature has chosen to include the specific *mens rea* of recklessness in our reckless homicide statute. Recklessness is a state of mind in which the actor is aware of his or her conduct, yet consciously disregards a risk which his or her conduct is creating. *See* William Shepard McAninach & W. Gaston Fairey, *The Criminal Law of South Carolina* 12-15 (2d ed. 1989). It has also been defined as "something more than mere negligence or carelessness . . . a conscious failure to exercise due care or ordinary care or a conscious indifference to the rights and safety of others or a reckless disregard thereof." *State v. Tucker*, 273 S.C. 736, 739, 259 S.E. (2d) 414, 415 (1979). The Model Penal Code includes definitions of the various kinds of culpability. It defines "recklessly" as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a sub-

stantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

Model Penal Code § 2.02 (2)(c) (1985).

The trial judge here held there was evidence of reckless-ness because there was evidence Rowell had crossed over the oncoming lane, thereby violation a statute. However, the Supreme court, in *In re Stacy Ray A.*, 303 S.C. 291, 400 S.E. (2d) 141 (1991), reversed the trial judge's conclusion that Stacy Ray A., a juvenile, committed reckless homicide. Under the facts of that case, the juvenile's car had stopped on the outermost portion of the decedent's lane, while the decedent's car had stopped partially off the paved portion of the road. The Court held, absent evidence of speeding, alcohol or drug use, or any other willful behavior, there was insufficient evi-dence to support a conviction. The Court concluded:

> The only evidence we have here is the physical fact of the collision, with the cars coming to rest on [the decedent's] side of the road. The State would have this Court view this physical fact, then address the defendant: it appears you may have been at fault here; prove to us you were not. The State may not rest upon such inferences and shift the burden of proof onto the defendant.
>
> Too many unanswered questions exist in this case, none of which the State has answered. Stacy A. could have blacked out; could have swerved to miss a pedestrian in his traffic lane; or could have had a blown left tire which caused his car to swerve. Instead of presuming any of these scenarios and requiring the State to present evi-dence making them less probable[,] the trial judge here has *presumed* Stacy A. drove recklessly and required him to disprove it. This is a presumption of guilt rather than of innocence, and may not be allowed to stand.

*Id.* at 293-94, 400 S.E. (2d) at 142-43 (underscored emphasis added).

In *Stacy Ray A.* our Supreme Court condoned using civil

cases which defined recklessness for punitive damages purposes as precedent for defining recklessness in criminal cases. In *re Stacy Ray A.*, 303 S.C. 291, 400 S.E. (2d) 141 (1991) (relying on *Suber v. Smith*, 243 S.C. 458, 134 S.E. (2d) 404 (1964)). However, after *Stacy Ray A.*, the Court decided *Wise v. Broadway*, 315 S.C. 273, 433 S.E. (2d) 857 (1993) (Toal, J., dissenting). There, in the context of a civil action, the Court held evidence of a statutory violation in and of itself sufficient evidence of recklessness to send the issue of punitive damages to the jury. We do not believe the Supreme Court would extend the holding in *Wise* to criminal recklessness, which requires the additional elements of awareness of the risk and a conscious disregard thereof.

Thus, neither the fact that Rowell's car had crossed the center line, nor the fact of the physical location of the car after the accident, can bootstrap the state's case into the recklessness arena. Although extremely tragic, and clearly negligent, Rowell's actions in and of themselves cannot support the element of recklessness. In *Stacy Ray A.*, there was no explanation for the location of the car,[4] and the state was not permitted to inject one based on the physical location of the accident. The state cannot be allowed to infer intent in a case where, for the purposes of reviewing a motion for directed verdict, there is no explanation for the accident.[5]

The state also argues Rowell's speed is evidence of recklessness in this case. However, Kissell testified Rowell was not speeding when their cars passed each other, which had to have been very shortly before the accident because of the distances involved.[6] The posted speed limit was 25 miles per hour. Rowell testified she was not speeding—"only doing about 20, 25 to 30 miles an hour." Twelve-year-old Randi Slaughter testified "It seemed to me like the car was

---

[4] In *Stacy Ray A.*, the juvenile was questioned at the scene and "appeared very disoriented and stated that he did not know what had happened." *Stacy Ray A.*, 303 S.C. 291, 292, 400 S.E. (2d) 141, 142.

[5] Although not pertinent to deciding the sole issue before us, we note Rowell offered an explanation at trial that she swerved to avoid children she thought she saw on her right. There was no other testimony concerning the existence of any other children in the area other than the group of pedestrians Rowell struck.

[6] The state concedes the time between Kissell passing the children and the accident was "practically seconds."

speeding *up*" (emphasis added), and twenty-year-old Jennifer Tomlinson stated "It seemed like it was coming fast, because I couldn't say exactly how fast it was coming. But all I can remember is it had to be coming fast, because by the time I was screaming, move, to the kids, she had already hit two of them." Viewed most favorably to the state, we assume Rowell was travelling as much as five miles over the posted speed limit. However, this testimony is simply insufficient evidence of excessive speed to meet the "reckless disregard for the safety of others" standard. *Cf.* P.A. Agabin, Annotation, *Speed, Alone or in Connection with Other Circumstances, as Gross Negligence, Wantonness, Recklessness, or the Like, Under Automobile Guest Statute,* 6 A.L.R. (3d) 769, 776 (1966) ("It appears to be well established that while speed is an important factor in all cases to be considered in determining the host operator's culpability under the pertinent guest statute, this factor, standing alone, does not as a rule show aggravated negligence within the meaning of the applicable statute").

Additionally, the state points to several other alleged statutory violations it contends demonstrate recklessness: duty to drive lower than posted limit where there is a special hazard to pedestrians; duty to use due care in avoiding a collision with any pedestrian; duty to use proper precaution upon observing any child; and duty to drive on the right side of the road. The state appears to be cataloging statutory violations that, based on the end result, appear to be applicable to the facts of this case. The fact that a tragic accident occurred because of Rowell's negligence does not establish conscious disregard of the safety of others. Having held evidence of a statutory violation alone is not sufficient evidence of recklessness to withstand a directed verdict motion, we find this argument also fails. Thus, as with the evidence of alleged speeding, the state's evidence concerning these violations is not sufficient to show conscious disregard of the safety of others.

Our review of other cases in which our courts have affirmed convictions for offenses requiring the element of recklessness confirms that a much higher degree of culpability than "mere" or ordinary negligence must be demonstrated. For example, in *State v. Jenkins*, 249 S.C. 570, 155 S.E. (2d) 624 (1967), the Supreme Court held evidence

which showed the defendant had been drinking, was speeding at an "extremely high rate of speed," and failed to reduce his speed or sound his horn as defendant approached a railroad crossing where children were riding bicycles was sufficient to support a finding of recklessness. Furthermore, the victim in that case was dragged over 200 feet. *See also State v. Hicks*, 305 S.C. 277, 407 S.E. (2d) 907 (Ct. App. 1991) (evidence defendant was drinking, had driven off roadway, did not stop at scene, and did not report incident to authorities sufficient evidence of recklessness to uphold denial of motion for directed verdict); *State v. Addis*, 257 S.C. 482, 186 S.E. (2d) 415 (1972) (question of recklessness under involuntary manslaughter statute was properly submitted to jury where there was evidence of drinking alcohol; victim was thrown onto hood and travelled some 78 feet before being thrown off; car and motorcycle came to rest 552 feet from the point of impact); *State v. Rachels*, 218 S.C. 1, 61 S.E. (2d) 249 (1950) (submitting recklessness to the jury was proper where truck driver saw an approaching bus but continued on a downgrade toward a narrow bridge, in misty rain, at an unsafe speed); *State v. McConnell*, 316 S.C. 272, 449 S.E. (2d) 778 (Ct. App. 1994) (evidence McConnell, who had been drinking beer and alcohol, drove a motorcycle at a high rate of speed through a stop sign, travelled seventy-nine feet before striking a curb, and then crashed through a garage door in a residential subdivision, sufficient to warrant submitting recklessness to jury); *cf. DeLee v. Knight*, 266 S.C. 103, 221 S.E. (2d) 844 (1975), *cert. denied*, 426 U.S. 939, 96 S.Ct. 2658, 49 L.Ed. (2d) 392 (1976) (affirming involuntary manslaughter conviction where there was evidence of persistent speed, lack of control, unexplained departure from the road, and pattern of careless weaving while operating a bus overcrowded with young children); *State v. Cribb*, 310 S.C. 518, 426 S.E. (2d) 306 (1992) (holding reckless homicide, involuntary manslaughter, and reckless driving are not lesser included offenses of felony DUI because felony DUI does not require recklessness).[7]

---

[7] For an historical explanation of the relationship between involuntary manslaughter and reckless homicide, see William Shepard McAninch & W. Gaston Fairey, *The Criminal Law of South Carolina* 162-70 (2d ed. 1989). Until 1968, involuntary manslaughter required only simple negligence when an inherently dangerous instrumentality, such as an automobile, was used. *Id.* at 165.

North Carolina courts have long drawn a distinction between negligence required for a tort and that required for an act to be a crime. *State v. Cope*, 204 N.C. 28, 167 S.E. 456 (1933) (ordering a new trial where Cope's conviction for manslaughter resulted from jury instructions on civil liability rather than criminal responsibility).[8] In *Cope* the North Carolina Supreme Court distinguished actionable negligence, a breach of due care making one liable for damages in tort, and culpable negligence, "such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *Id.* at 458. *Accord, State v. Powell*, 336 N.C. 762, 446 S.E. (2d) 26 (1994) (violation of a statute designed for the protection of life or limb which imposes a duty upon members of society will constitute culpable negligence if the violation is willful, wanton, or intentional). Georgia courts have also differentiated between criminal negligence and tort negligence. *See, e.g., Cain v. State*, 55 Ga. App. 376, 190 S.E. 371 (1937) (violation of penal automobile statute designed for the protection of human life and limb proximately resulting in injury or death is criminal negligence if intentionally, willfully, or wantonly committed. The court in *Cain* held the words "criminal negligence" synonymous with "culpable negligence." It reasoned:

> "The lexicons tell us that Cicero and Horace used the word 'culpa' in the sense of crime; fault; and in some metonymic senses. Formerly, the primary meaning of the English word 'culpable' was criminal; deserving punishment. Dr. Johnson's dictionary defined the word thus: Criminal. Shak. Guilty. Spenser. Blameworthy. Hooker. In popular use the primary meaning has now shaded down to: deserving blame or censure; blameworthy. Oxford English Dictionary. In Blackstone's chapter on Plea and

---

[8] Rowell neither objected to nor appealed the trial judge's instructions to the jury, which included charges on several traffic laws, with the additional instruction that "A violation of any of these statutory provisions, ladies and gentlemen, is evidence of recklessness for your consideration." Moreover, although Rowell's counsel inquired of the trial judge whether he had given requested charges on "mere negligence" and "recklessness not lying in speed alone," the trial judge's response that he was denying these two requests to charge was similarly not objected to nor appealed.

Issue, it is said a prisoner desiring to plead the general issue, or not guilty, pleaded, 'Non culpabilis,' or, 'Nient culpable.' The clerk entered the plea on the minutes, 'Non cul.,' or, 'Nient cul.'" Under our law, criminal negligence may be either gross or willful and wanton negligence, but not merely slight or ordinary.

\* \* \* \* \* \*

If a person driving a motor vehicle upon a highway *intentionally* violates the provisions of statutes regulating the operation of motor vehicles upon the public highways ... and thereby proximately causes personal injury or death, he is deemed to be criminally culpable. ... Such person would likewise be criminally culpable if he operated a motor vehicle upon a public highway in violation of the statutes and such violation disclosed a *reckless disregard* of consequences or a *heedless indifference* to the rights and safety of others and *reasonable foresight that injury would probably result.*

*Id.* at 374 (citations omitted) (emphasis added).

### E. Conclusion

If the case before us were a civil lawsuit for damages, the issue of negligence, and even that of punitive damages, would be for the jury. However, viewing the facts in the light most favorable to the state, we find no evidence Rowell showed reckless disregard for, or heedless indifference to, her victims. Nor did she have reasonable foresight that an injury would probably result from her conduct. There was no evidence of alcohol or drug use, nor was there any evidence of excessive speed. Despite the horribly tragic results of the accident, Rowell remains cloaked with innocence until the state proves each element of the crime with which she is charged. Absent evidence Rowell consciously disregarded the safety of others, the state has not shown any evidence of one of the necessary elements, recklessness. Accordingly, the trial fudge erred in failing to grant her directed verdict motion. Her conviction is therefore reversed. This case is remanded for entry of a verdict of acquittal.

Reversed and remanded.

HOWELL, C.J., concurs and CURETON, J., dissents in separate opinion.

CURETON, Judge, (dissenting):

Believing the evidence sufficient to warrant submission of the case to the jury, I must respectfully dissent. The majority accurately notes that our task on appeal is to determine whether there is any evidence, either direct of circumstantial, which tends to prove Rowell's guilt. Further, this court must view the evidence in the light most favorable to the State. We are concerned only with the existence of evidence, not its weight; where the State presents any evidence which tends to prove the defendant's guilt, or from which the defendant's guilt could be fairly and logically deduced, the case must go to the jury. *State v. Childs*, 299 S.C. 471, 385 S.C. (2d) 839 (1989); *State v. Brownlee*, 318 S.C. 34, 455 S.E. (2d) 704 (Ct. App. 1995). Moreover, a motion for directed verdict is properly refused where the determination of guilt is dependent on the credibility of witnesses, as this is a question that goes to the weight of the evidence and is clearly for determination by a jury. *State v. Ham*, 268 S.C. 340, 233 S.E. (2d) 698 (1977), *cert. denied*, 434 U.S. 1019, 98 S.Ct. 740, 54 L.Ed. (2d) 765 (1978); *State v. Fleming*, 254 S.C. 415, 175 S.E. (2d) 624 (1970). I believe the majority has not only weighed the evidence, but has made credibility determinations in Rowell's favor.

The facts of this case viewed in the light most favorable to the State are as follows. Randi and Sarah Slaughter and Jennifer Tomlinson, the three girls who survived the accident, testified that as they walked north on the east (right) side of Wiley Drive, the victims, Erica Spon and Hank Tomlinson, were on the opposite (west) side of the street also traveling north. Erica was pushing Hank in a baby stroller. A car driven by Alberta Kissell passed them heading north. Jennifer then instructed Erica to cross to the east side of the street and stay together with the rest of the children. Erica complied, pushing Hank across the street. At this point, the whole group was proceeding north on the east side of Wiley Drive. They saw Rowell's car turn onto Wiley Drive from 28th Avenue. Jennifer again told everyone to get over, and they moved further

into the grassy area.[1] Jennifer noticed Rowell's car was traveling in its proper lane (west lane) for a distance, but then it crossed the center line into the eastern lane and suddenly drove into the grassy shoulder of the road striking Hank's stroller first, then hitting Erica, Randi and finally Jennifer.

On the other hand, Rowell testified that as she traveled south on Wiley Drive she saw two children walking on the west side of the street, and she moved to the left to avoid hitting them because she saw no one to her left; whereupon she hit the children. Much of her testimony not only conflicts with that of the State, but is itself contradictory. At trial she testified inconsistently that she hit the children in the middle of the street, about two feet to the east of the center of the street, and also at the eastern edge of the street. She vehemently denied her car ever left the paved portion of the road. She also testified she applied her brakes and the car slid to the side a little. However, the investigating officer found no indication she applied her brakes.

The surviving girls' testimony is consistent with the physical evidence. It is also consistent with the opinion of the investigating officer who testified Rowell's car hit the victims some two to four feet into the grassy shoulder. Kissell testified she saw Rowell turn onto Wiley Drive and as she passed her, Rowell was in the proper lane and did not appear to be speeding. She then stated, however, that after Rowell passed her, she looked in her rear view mirror and observed Rowell travelling on the wrong (east) side of the road. Thus, despite Rowell's contention she hit the group near the center of the road, the testimony and physical evidence viewed in the light most favorable to the State clearly indicate they were hit two to four feet into the grassy area.

Other evidence also reflects upon the inconsistencies of Rowell's testimony and demonstrates the need for jury credibility determinations. For instance, the investigating officer testified that on the night of the accident, he asked Rowell to show him where her car hit the children. With her mother

---

[1] While the majority states Sarah testified she, Randi and Jennifer were in the middle of the road when Kissell passed, Jennifer and Randi testified they were off the road. Kissell also testified she saw Erica and the stroller on the west side of the road and the other three girls on her right (east) side of the road as she passed them while driving her car in the middle of the road.

serving as interpreter, Rowell responded to the investigator's question by immediately walking to the "extreme east side of the roadway." However, after Rowell's mother communicated with her through sign language, Rowell changed her response by moving near the center of the street. Moreover, the children Rowell claimed to have seen on the west side of the street and swerved left to avoid, do not appear to have been seen by Kissell, the survivors or anyone else.[2] Thus, the jury may have concluded these children never really existed. Because Rowell's only justification for being on the wrong side of the road was to avoid hitting these two children, her credibility was critical.

The evidence regarding the darkness at the time of the accident is also conflicting. Rowell and other witnesses testified it was very dark. However, there were two street lights in the block where the accident occurred and two of the State's witnesses testified it was not so dark that you could not see. There was evidence Rowell lived in the area and was aware that Wiley Drive was heavily used by walkers. In fact, the two men who lived across the street from the accident scene and were the first to come to the assistance of the victims, had just returned from jogging. Rowell's conduct can be contrasted to that of Kissell who testified that as she drove past the children just seconds before the accident, she had no problem seeing them and slowed down. Finally, there is some evidence, albeit conflicting, that Rowell was speeding as she approached the children. In fact, Rowell testified she could have been going as fast as 30 MPH in a 25 MPH zone.[3]

At the core of this appeal is the question of whether there was any evidence of reckless conduct on Rowell's part at the time of the accident. I agree with the majority that recklessness is more than mere negligence and "denotes a conscious failure to exercise due care or ordinary care or a conscious indifference to the rights and safety of others or a reckless disregard thereof." *State v. Tucker*, 273 S.C. 736, 739, 259 S.E.

---

[2] Her description of the two children does not fit the description of the children who were killed, nor do we think she claims they were the same.

[3] I note that in light of Rowell's claim the road was narrow, it was very dark and she could not see the west side of the road, the jury could have determined she had a duty to drive a speed consistent with those conditions which may have been well below the posted speed limit. *See* S.C. Code Ann. § 56-5-1520.

(2d) 414, 415 (1979). It is more than heedlessness which was equated to negligence in *Cummings v. Tweed*, 195 S.C. 173, 10 S.E. (2d) 322 (1940). On the other hand, one does not have to intend the specific consequences of his act in order to be reckless. *Peak v. Fripp*, 195 S.C. 324, 11 S.E. (2d) 383 (1940). As stated in *State v. Rachels*, 218 S.C. 1, 8, 61 S.E. (2d) 249, 252-53 (1950):

> As a general rule, the question [of] what constitutes reckless driving is to be determined from all the surrounding circumstances where the statute denouncing the offense does not specifically declare what particular acts shall constitute the offense. Accordingly, in determining the guilt of the accused, his manner of driving is to be considered with respect to the time when and the place where, the alleged violation occurred; the width, character and condition of the highway, weather conditions as to light or darkness, . . . the opportunity for observation and familiarity with the highway; and the chance of being able to stop or avoid a collision.
>
> The test of recklessness, as stated, does not lie in speed alone, but in that and all other attendant circumstances which together show a reckless disregard of consequences.

The majority opines that while violation of a safety statute is evidence of civil recklessness and willfulness, it is insufficient to support an inference of criminal recklessness. I know of no reason the rules should be different. As stated by the court in *Wise v. Broadway*, 315 S.C. 273, 433 S.E. (2d) 857 (1993), violation of a statute standing alone does not constitute recklessness, but is some evidence of recklessness and may be considered along with other circumstances in determining whether a defendant was reckless. Our sister state of North Carolina, while making a distinction between willful and inadvertent violations of safety statutes,[4] has long held that viola-

---

[4] The often quoted landmark case of *State v. Cope*, 204 N.C. 28, 167 S.E. 456, 458 (1993) makes the distinction as follows:

6. An intentional, willful, or wanton violation of a statute or ordinance, designed for the protection of human life or limb, which proximately results in injury or death, is culpable negligence. (Citations omitted.)

tion of such statutes which proximately results in injury or death is evidence of culpable negligence. *State v. Weston,* 273 N.C. 275, 159 S.E. (2d) 883 (1968); *State v. Hefler,* 60 N.C. App. 466, 299 S.E. (2d) 456 (1983), *aff'd,* 310 N.C. 135, 310 S.E. (2d) 310 (1984). In a pedestrian-auto death case, the Virginia Supreme Court upheld a conviction for involuntary manslaughter where one tractor-trailer driver attempted to pass another tractor-trailer on a 20-foot-wide road knowing that to do so would cause his truck to come within two feet of a pedestrian walking on the shoulder of the road. Tragically, as he passed the other truck, his truck skidded causing him to lose control and swerve onto the shoulder of the highway thus killing the pedestrian. *Richardson v. Commonwealth,* 192 Va. 55, 63 S.E. (2d) 731 (1951). Compare, *Tubman v. Commonwealth,* 3 Va. App. 267, 348 S.E. (2d) 871 (1986) where a similar conviction was reversed where the undisputed evidence showed the defendant-driver inadvertently violated a failure to yield the right-of-way at an intersection causing a collision with a motorcycle whose approach was partly obscured. The court found the defendant-driver "was not driving in such a manner that he would be aware, from his knowledge of the existing circumstances and conditions, that his conduct probably would cause injury to another." *Tubman,* 348 S.E. (2d) at 875. In the final analysis, even where there has been a statutory violation, ". . . it is always for the jury to determine whether a party has been reckless, willful, and wanton." *Wise,* 433 S.E. (2d) at 859. However, "it is not obligatory as a matter of law for the jury to make such a finding in every case of a statutory violation." *Id.*

---

7. But an unintentional violation of a prohibitory statute or ordinance, unaccompanied by recklessness or probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, is not such negligence as imports criminal responsibility. (Citations omitted.)

8. However, if the inadvertent violation of a prohibitory statute or ordinance be accompanied by recklessness or probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, amounting altogether to a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others, then such negligence, if injury or death proximately ensues, would be culpable, and the actor guilty of an assault or manslaughter, and under some circumstances of murder. (Citations omitted.)

As noted above, it is not the duty of the trial court to weigh the evidence in passing on a defendant's motion for a directed verdict or to make credibility determinations. When there is a conflict in the evidence raised by the defendant's evidence, the court should only consider the facts fairly inferable from the State's evidence and disregard the defendant's conflicting evidence. 75A Am. Jur. (2d) *Trial* § 1040 (1991) (the prosecution is entitled to have all of its relevant evidence treated as true and every controverted fact resolved in its favor); *Young v. Bost*, 241 S.C. 289, 128 S.E. (2d) 118 (1962) (in passing on defendant's motion for directed verdict when there is a conflict in the evidence, judge should disregard conflict raised by defendant's evidence and only consider the facts fairly inferable from plaintiff's evidence); *accord State v. Quinn*, 111 S.C. 174, 97 S.E. 62 (1918); 3 A.L.R. 1500 (1918) ( a motion for directed verdict is in the nature of a demurrer to the evidence, and therefore a quasi admission of the truth of the nonmoving party's evidence); *cf. State v. Turner*, 117 S.C. 470, 109 S.E. 119 (1921) (assuming as true all evidence presented by the State, it did not support a conviction and trial court should have directed a verdict for defendant).

The majority opinion relies heavily on *In re Stacy Ray A.*, 303 S.C. 291, 400 S.E. (2d) 141 (1991) to sustain its reversal of the trial court. I believe *Stacy* is clearly distinguishable. In *Stacy* there were only two witnesses to the accident, one was killed and the other could not remember what happened. The only evidence in the case was physical evidence that Stacy's car came to rest in the victim's lane of traffic after the collision. The Supreme Court concluded that fact alone was insufficient to support a finding of recklessness absent some showing of how the accident occurred.[5] Here, there is both direct and circumstantial evidence pointing to how the accident occurred and from which the jury could have determined Rowell drove her vehicle with a reckless disregard for the safety of others. This recklessness could be gleaned not only from statutory violations, *see* Annotation, *What Amounts to Reckless Driving of Motor Vehicle within Statute Making Such a Criminal Offense*, 52 A.L.R. (2d) 1337 (1957), but from the ev-

---

[5] The court was particularly concerned that the family court had improperly shifted the burden of proof from the State to the minor defendant.

idence as a whole viewing the evidence from the eyes of the State which shows Rowell drove her car at an excessive rate of speed for the conditions then and there prevailing, failed to keep a proper lookout and remain diligent in watching out for children using Wiley Drive,[6] drove not only left of the center line, but to the other side of the road into the grass to hit these victims, and finally, never used her brakes. In my view, unless we selectively view the evidence in Rowell's favor, there was ample evidence justifying submission of the case to the jury. Therefore, I would affirm.

## 95-62

---

[6] In applying recklessness to the wrongful death statute our Supreme Court in *Cummings v. Tweed*, 195 S.C. 173, 180, 10 S.E. (2d) 322, 325 (1940) stated:

> [I]f testimony is introduced touching or supporting allegations as to defendant's failure to keep proper lookout or have proper control [of his vehicle], it would ordinarily be a question for the jury whether such conduct constituted a reckless disregard of the rights of the passenger, within the meaning of the guest statute.

*Accord Fuller v. Bailey*, 237 S.C. 573, 118 S.E. (2d) 340 (1961) (violation of statutory provisions regarding keeping car under proper control, driving at excessive rate of speed, failing to drive at appropriately reduced speed, were evidence of recklessness for jury to decide).